GEORGE A. SHAW & CO. v. CLEVELAND, C., C. & ST. L. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1909.)

No. 1,936.

1. CONTRACTS (§ 186*)—CONTRACT FOR RAILROAD CONSTRUCTION—CONSTRUCTION.

A provision of a contract for railroad construction, giving the railroad company the right to apply any money due or to become due under the contract to the payment of liens for labor or materials furnished to the contractor, is wholly for the company's benefit, and does not impose any contract obligation upon it to pay such liens.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 794; Dec. Dig. § 186.*]

2. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

The construction of a state Constitution or statute by the highest court of the state is binding upon the federal courts in cases involving rights which arose after such construction was given.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954, 957, 960, 968; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. COURTS (§ 366*)—FEDERAL COURTS—VALIDITY OF STATE STATUTE. .

Bates' Rev. St. Ohio, § 3231—1, which gives an absolute lien upon the property of a railroad company for supplies or materials furnished for the construction of its road to any contractor or subcontractor, is unconstitutional and void, as an abridgment of the liberty of contract secured by the Bill of Rights of the state Constitution, under the construction placed on such constitutional provision by the Supreme Court of the state.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 366.*]

4. CONTRACTS (§ 2*)—LAW GOVERNING—PLACE OF CONTRACT.

Bates' Rev. St. Ohio, § 3207, which requires a railroad company, contracting for construction work, to stipulate in its contract that it will pay out the contract price to the persons and in the order named therein, conceding its validity, can have no application to a contract made in another state for work to be done in such state.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2–41, 145; Dec. Dig. § 2.*]

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Action by George A. Shaw & Co. against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

E. C. Pyle, for appellants.
George Hoadly, for appellee.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge. This is a bill asserting a statutory lien in behalf of a subcontractor against a railroad company. The question is quite simple. The Shutt Improvement Company made a contract in the state of Indiana for double-tracking a part of. the railway com-

pany's line which lies in Indiana. It was convenient for the Shutt Company to operate a commissary in aid of their work, for the purpose of furnishing groceries and like supplies to their employés. They bought these goods from the appellants, grocers doing business in Cincinnati, and they were delivered at the station of the railroad company in that city; the railroad company having contracted with the Shutt Company to convey all materials and supplies, needed in carrying out the contract, free of charge. After doing a great part of the job, the Shutt Company broke down, and the railroad company finished the contract work at a cost much in excess of the contract price. The contract price, remaining unpaid when the Shutt Company failed, was applied, as far as it would go, in finishing the work and in relieving the property of such claims as were regarded as liens under the Indiana law. The contract between the railroad company and the contractor expressly provided that the former might thus protect itself by the application of funds due, or to become due, under the contract, in discharge of liens in favor of labor or materials furnished to the contractor. This was a provision wholly for the benefit of the owner, and no contract obligation to pay off such liens was imposed or assumed. The Shutt Company owed the appellants a balance, on account, of some $12,000 when it abandoned the work. This claim the railroad company refused to pay or assume, because it was advised that it did not constitute a lien upon its road. After paying the expense of finishing the contract work and such claims against the Shutt Company which it was advised were liens, the Shutt Company was indebted to the railroad company in a large sum on account of payments in excess of the contract price. The appellants in no way attached or garnished the fund reserved out of the contract price, and not a dollar of the contract price remained unpaid when this bill was filed. Neither is it shown that the railroad company came under any contract, express or implied, to pay the debt due to appellants by the Shutt Company. Nor was the conduct of the railroad company in dealing with the Shutt Company, or the appellants, in respect to the contract price, such as to constitute it in any way a trustee for any part of the purchase price in respect to appellants.

The liability of the railroad company on account of this claim must, therefore, arise out of some statute directly imposing a lien upon the appellee's line of railway or fastening some charge upon the contract price. The primary claim is that a statutory lien did arise under the law of Ohio. For the appellee it has been urged that, aside from the question of the validity of the Ohio statute, under which complainant below asserted a lien, the statute, if valid, does not embrace groceries and provisions. It has also been urged that these supplies were furnished to be used upon that part of the line of the appellee's railroad which is situated in the state of Indiana, and that, if any lien was created, it was against the property of the company in Indiana, and as a consequence of some Indiana statute. We shall not consider either of these defenses, but for the purposes of the case will assume that groceries and provisions are "supplies," within the meaning of the Ohio statute, and that the sale and delivery within Ohio created a lien

under the Ohio mechanic's lien statute, which is enforceable in Ohio against the railway as a unitary structure.

The result must turn upon the solution of the question of whether there was any valid statutory lien in favor of a subcontractor for supplies furnished a contractor for railroad construction? There are two acts under which appellants claim a direct or implied lien. One is the act of March 20, 1889 (86 Ohio Laws, p. 120), constituting sections 3231—1 to 3231—5, Bates' Revised Statutes of Ohio. That act provides that for supplies and materials furnished to any contractor or subcontractor for the construction of any railroad, embankment, abutment, pier, side track, or excavation, or for the making of any canal, turnpike, street railway, or other public structure, there shall be an absolute lien on the whole of the property on which labor is done, or to which such materials or supplies have contributed, whether same was done for or furnished at the instance of the owner, "or any contractor or subcontractor." The other Ohio act is one of April 6, 1883 (80 Ohio Laws, p. 99), found now as sections 3207 to 3211, Bates' Revised Statutes of Ohio.

We shall first deal with the act of March 20, 1889, particularly that part which constitutes section 3231—1, Revised Statutes, being the section which declares a lien in favor of subcontractors in express terms. Was it competent for the Ohio Legislature, under the limitations of the organic law of the state, to so abridge the right of an owner in respect of his power of contracting as to impose upon his property, against his will, a lien in favor of third persons who should furnish labor, material, or supplies at the instance of a contractor for an improvement upon the land of such owner, and contrary to the arrangement between the owner and the contractor for the payment of the contract price? The precise question was answered in the negative by the Supreme Court of Ohio in the case of Palmer v. Tingle, 55 Ohio St. 423, 45 N. E. 313. The syllabus of that case, that being the authoritative decision of the Ohio court, reads as follows:

"The inalienable right of enjoying liberty and acquiring property, guaranteed by the first section of the Bill of Rights of the Constitution, embraces the right to be free in the enjoyment of our faculties, subject only to such restraints as are necessary for the common welfare.

"Liberty to acquire property by contract can be restrained by the General Assembly only so far as such restraint is for the common welfare and equal protection and benefit of the people; and such restraining statute must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of the General Assembly in such cases is not conclusive.

"While a valid statute regulating contracts is by its own force read into and made a part of such contracts, it is otherwise as to invalid statutes.

"The act of April 13, 1894 (91 Ohio Laws, p. 135), in so far as it gives a lien on the property of the owner to subcontractors, laborers, and those who furnish machinery, material, or tile to the contractor, is unconstitutional and void. All to whom the contractor becomes indebted in the performance of his contract are bound by the terms of the contract between him and the owner."

The Ohio act there held void was the act of April 13, 1894 (91 Ohio Laws, p. 135). The act referred to amended the former act, now section 3184, Bates' Revised Statutes of Ohio, which gave the lien in fa-

vor of one who should do labor or furnish machinery or materials by virtue of a contract "with the owner or his authorized agent," by giving the lien to any one who should furnish labor or materials "by virtue of a contract with or at the instance of the owner or his agent trustee, contractor, or subcontractor." The difference between that act and the one now involved consists in the fact that the amendatory act of 1894 applied only to section 3184, Revised Statutes, which did not, in express terms, refer to corporations, while section 3231—1 applies to railroads and certain other public service corporations. We shall later consider whether this fact takes the present case outside of the authority of Palmer v. Tingle.

But it is said that this court, in Jones v. Great Southern Fireproof Hotel Company, 86 Fed. 370, 30 C. C. A. 108, held that section 3184, Revised Statutes of Ohio, as amended by the act of April 13, 1894, was not unconstitutional under the Constitution of Ohio, but was valid and enforceable, and that in that view we were affirmed by the Supreme Court in Great Southern Fireproof Hotel Company v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778. The lien asserted in Jones v. Great Southern Hotel Company, and enforced by this court, arose before the Ohio court had decided Palmer v. Tingle, and before the Ohio court had decided any case affecting the constitutionality of any act creating a lien in favor of persons having no direct contract with the owner. We were, therefore, not only at liberty, but under obligation, to exercise an independent judgment in respect to the validity of the statute in question. The lien now asserted arose long after the decision in Palmer v. Tingle, and, if that decision is to be regarded as a construction and application of the organic law of Ohio, it is obviously our duty to accept that construction and apply it to the case now under consideration, inasmuch as we are not now dealing with rights which arose before that decision, but with rights under contracts made long since that construction.

The obligatory character of Palmer v. Tingle does not rest upon the fact that it was a decision in respect to the very statute now involved, for that is not the case. Nor does its obligatory effect rest alone upon the similarity of the lien created under the act now involved with the lien under the later act of 1894. Neither does our obligation depend upon the application of any general rule of statutory or constitutional construction announced in that case, or in O'Brien v. Wheelock, 95 Fed. 883, 37 C. C. A. 309, affirmed in 184 U. S. 450, 22 Sup. Ct. 354, 46 L. Ed. 636. No question of statutory construction was involved in Palmer v. Tingle, and none is raised here. What the Supreme Court of Ohio decided in Palmer v. Tingle was that that part of the organic law of Ohio which declared that the "right of enjoying and defending life and liberty" and of "acquiring, possessing, and protecting property," included and involved the right of any owner of property to make any contracts he pleased in respect of improvements to be erected thereon which did not injuriously affect the public welfare. Coming to the application of that constitutional declaration, thus interpreted, the Ohio court said:

"It was not for the common public welfare that the liberty of contract should be taken away from the owner of a building to enable the seller of materials

to collect their value from a man who never purchased them, and has already fully paid the one with whom he contracted for all that he has received."

When considering the weight to be given to Palmer v. Tingle, this court, in recognition of our duty to lean toward an agreement with the Ohio court, though not under obligation to follow it in a case when rights' had arisen before that decision, referred to the identity of this constitutional declaration with like provisions in the organic law of other states as raising for our consideration a larger question of constitutional law than might otherwise be the case. In view, therefore, of the fact that the Ohio court had before it no provision of the Ohio Constitution which was peculiar to the Ohio Constitution, we were constrained to differ with that court as to the force and meaning of the words in question as a limitation restraining the Ohio Legislature. In this we were affirmed by the Supreme Court of the United States. But the case is quite different now. The highest court of Ohio, in the exercise of its undoubted authority, construed this declaration in the Ohio Bill of Rights as denying to the Ohio Legislature the power to create a lien upon an owner's property through the unauthorized acts of a principal contractor. The distinction between our obligation in passing upon rights accrued before Palmer v. Tingle, and rights which have accrued since, was well stated by Justice Harlan in Great Southern Hotel Company v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778, when that eminent jurist, for the court, said:

"In our opinion, neither the decisions of Palmer v. Tingle, Young v. Lion Hardware Co., 55 Ohio St. 423, 45 N. E. 313, nor any other case in the Supreme Court of Ohio, precluded the Circuit Court from exercising its independent judgment as to the constitutionality of the statute of Ohio here in question. If, prior to the making of the contracts between the plaintiff and McClain, the state court had adjudged that the statute in question was in violation of the state Constitution, it would have been the duty of the Circuit Court, and equally the duty of this court, whatever the opinion of either court as to the proper construction of that instrument, to accept such prior decision as determining the rights of the parties. But, the decision of the state court as to the constitutionality of the statute in question having been rendered after the rights of the parties to this suit had been fixed by their contracts, the Circuit Court would have been derelict in duty if it had not exercised its independent judgment touching the validity of the statute here in question. In making this declaration we must not be understood as at all qualifying the principle that, in all cases, it is the duty of the federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the Constitution or laws of the state."

But it is said that the Ohio court did not have before it in Palmer v. Tingle the particular act now in question, but another, a general mechanic's lien act, and that the acts here involved apply to railroads and other corporate companies, and that the legislative limitation determined by Palmer v. Tingle was in respect to the contracts of persons and not of corporations. But it is difficult to see why, if the Ohio Legislature has no power to create a lien against the will of an individual owner of real property in favor of persons having no contractual relations with him, it should have such power simply because the owner is an aggregation of persons with corporate powers. Indeed, the Ohio court in Palmer v. Tingle supports its conclusion that the act of 1894 violated liberty of contract by referring to State v.

Lake Erie Iron Company (an officially unreported Ohio case) 33 Ohio Law Bul. 6, by saying:

> "It was the infringement of the liberty of contract that induced this court in State v. Lake Erie Iron Company (officially unreported) 33 Ohio Law Bul. 6, to hold the statute unconstitutional which required corporations to pay their employés at least twice in each month."

In Cleveland v. Construction Company, 67 Ohio St. 197, 65 N. E. 885, 59 L. R. A. 775, 93 Am. St. Rep. 670, the Supreme Court held an act void, as an abridgment of liberty of contract, which denied to municipal corporations the right to agree with contractors and subcontractors as to the hours of labor which should constitute a day's labor. In Stewart v. Gardner, 10 Ohio Cir. Ct. R. (N. S.) 408, the circuit court of Lucas county had under consideration the validity of section 3231—1, Revised Statutes of Ohio. The point was made that Palmer v. Tingle was not controlling, because section 3231—1 applied to railroads. It was held in an elaborate opinion that the clause of the Ohio Bill of Rights applies not only to individuals, but to private corporations, and that the Legislature was without power to qualify the right of a railroad company to make contracts in respect to construction or improvements which it could not make with respect to individuals. It was held that Palmer v. Tingle was a controlling authority, and that so much of section 3231—1 as undertook to give to subcontractors for materials or supplies a lien, without the consent of the owner, was unconstitutional. This judgment directly involved the very act now under consideration, and was affirmed, without opinion, by the Supreme Court of Ohio, in 78 Ohio St. 451, 85 N. E. 1132. The affirmance could not have gone upon any other ground than that of the invalidity of the very act under which appellants now assert a lien. It is true that Stewart v. Gardner was decided after the rights of appellants arose, and is not, therefore, so obligatory as Palmer v. Tingle. The decision is, however, of weight sufficient to solve any doubt we might have as to the question now raised.

Neither has the appellant shown any right to equitable relief under his prayer for general relief. This contention is bottomed upon section 3207, Revised Statutes, which reads as follows:

> "Sec. 3207. (What Contracts for Railroad Work shall Stipulate; Claims; Order of Priority.) Any person, association of persons, or corporation contracting for the construction of a railroad, depot buildings, water-tanks, or any part thereof, shall be liable to and shall pay to each person performing labor or furnishing materials stipulated for in the contract with the owner of the road, under a contract express or implied with the original contractor, or with any subcontractor, for the whole or any part of the work stipulated in the original contract with the owner of the railroad; and the railroad company shall provide, in its contract with any person, association of persons, or corporation for the construction of its road, or any part thereof, that payments under its said contract shall be made in the following order of priority: First, to the persons performing labor or furnishing materials, or furnishing boarding on the order of any contractor or subcontractor to persons employed by them, or either of them, in furnishing materials or labor for or in the construction of such railroad, without preference. Second, to any subcontractor, any balance due under his contract after payment of his or their liability to persons performing labor or furnishing materials or boarding, under his or their contract. Third, to any contractor, or construction company intervening between a subcontractor and the railroad company, in the order of such in-

tervention from such subcontractor upward to the owner of the railroad, any balance due after payment by the company, of amounts found due in the order of priority above stipulated."

That section, by providing that the contracting railroad owner shall pay out of the contract price "each person" who shall labor or furnish materials or supplies stipulated for in the contract, in the order named in the section, regardless of any contract relation between the owner and such person, manifestly interferes quite as much with the owner's liberty of contract as if an independent lien had been declared in favor of each person so to be paid. Indeed, the restraint upon the owner's right of liberty of contract is even more effectual, for the owning railroad is required to stipulate in its contract that it will pay out the contract price to the persons and in the order named in the section.

Aside from the obvious fact that, if section 3231—1 et seq. is obnoxious because the owner is subjected to liability to persons with whom he has no contract, this section is void for the same reason, there is the further difficulty in this case, namely, the contract made by the railroad company was made in the state of Indiana, to be wholly performed by the Shutt Company in that state. A contract made in Indiana, to be exclusively performed in that state, was not subject to the requirement of the Ohio statute that the owning railroad shall provide, in its contract, for the payment of the contract price to labor and supply claims in the order named in the statute. 'No such provision was inserted in the contract with the Shutt Company, and no ground exists upon which we can hold that the term is to be read into the agreement for the benefit of persons having no contractual relations with the railroad company.

Neither is there any principle of general equity upon which appellants can obtain any relief against the appellee. No facts are shown which raise any trust, or in any way constitute the relation of debtor or creditor, between appellants and appellee. No fraud was practiced upon which a liability can be raised, and the appellants must look alone to the Shutt Improvement Company for the balance of their account.

Decree affirmed.