Comstock, J.
On the 27th of August, 1849, Mr. Grant, the plaintiff’s assignor, purchased an open account in favor of Grant & Allen, against the defendant, the last item of which accrued about seven years before this suit was commenced. At the time of that purchase, Grant and the defendant were indebted to each other in nearly equal sums, upon mutual dealings 'between themselves. In these mutual dealings, most of the items on both sides accrued within six years before the commencement of this suit, and it is conceded that none of them are barred by the statute of limitations. The statute had run several years against the account of Grant & Allen, before the assignment to Grant, but it was not yet barred. At the commencement of the suit it was barred, unless the purchase by Grant brought it into the “mutual, open and current” accounts between him and the defendant, so as to bring it within the section of the statute which declares that “ in an action brought to recover abalance due upona mutual, open and current account, when there shall have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side.” (Code of 1851, § 95; 2 R. S., 296, §23.) Since Mr. Grant bought that account, there have been no dealings between him and the defendant, and it does not appear that the latter ever knew of the assignment until this suit was commenced. Upon this statement the question is, whether the statute of limitations is a bar to the account of Grant & Allen.
*228 It is certain that, before the assignment of this account to Grant, it was no part of a mutual, open and current account between him and the defendant, nor was it an account between those parties in any sense. If it ever entered into their mutual accounts, it was when Grant became the sole owner, by virtue of his purchase; and then, instead of being, as it was in fact, the oldest of all the accounts on which the suit was brought, it became the last item, because it was purchased after all the others had accrued. Until then it had not entered into the dealings of the parties at all; and if after that time it be considered a dealing, it was the last they had. Now, the section of the statute which has been referred to declares in terms that the cause of action shall be deemed to have accrued from the time of the last item proved on either side ; and if this section applies to such a case as the present, the consequence plainly is, that Grant, by the act of buying in an outstanding account already nearly barred, not only renewed it for six years longer without the defendant’s knowledge, but also imparted a similar renewal to all the other accounts between them. It must follow, too, that in any other case where there are mutual accounts between two men, and a balance, large or small, exists in favor 01 one of them, which is nearly barred by the lapse of time since the last item accrued, the one to whom the balance is due may buy another account of a third person, also nearly barred, and so renew the whole for six years longer. It appears to me that ¿either the letter nor the policy of the statute leads to such results. ■
The section quoted speaks only of “ mutual, open and current accounts ” and “reciprocal demands” between the parties. Upon a reasonable construction this should be held to mean accounts and dealings originally between the parties. If the mere purchase of a claim by one of them brings it within the statute, then it may happen that two perse ns, who never had a single dealing with one another *229 may each purchase demands against the other, and each without the other’s knowledge, and the statute of limitations will commence to run, not from the time when the demands severally became due, but from the time the last assignment of any one of them was made. If any one of the items of a .mutual, open and current account may be of this kind, it is clear that every other may; and such a conclusion, it seems to me, may with safety he denied. I do not say that, where a chose in action is assigned, the debtor and the assignee may not agree to charge and credit it as an item in a running account; but where there is no such agreement, nor even knowledge on the part of the debtor of the assignment, I think the debt retains its original character, .subject, as before, to the statute of limitations.
Opposed to the tendency of these remarks, the suggestion may arise, that the account purchased and assigned is to be regarded as having accrued at the time of its original creation, and then, by force.of the section under consideration, is drawn into the subsequent mutual accounts between the parties, and thus saved from the operation of the statute. This suggestion, followed to its results, will prove too much. If it should so happen, as we have seen it might, that all the accounts of both sides were purchased, and all of them of more than six years’ standing, though recently assigned, upon this theory all of them would be barred. To render the section operative, therefore, in such a case ■ the accounts must be considered as accruing at the time-of the sale and assignment of each, and that is directly contrary to the suggestion supposed.
There is nothing in the history' or policy of this section to call for the construction which the plaintiff contends for. The English statute of limitations, passed in the reign of James I., contained an exception of “ actions which concern the trade of merchandise between merchant and merchant their factors or servants.” Our former statute contained an exception in the same words. (1 R. S., 186.) Without *230 reference to this exception, the English courts held that where there were mutual demands, if any item of the account was within six years before suit commenced, it was immaterial whether the parties were merchants or not, because such new item was equivalent to a new promise reviving the debt. (Catling v. Spaulding, 6 T. R., 189; Bullet's N. P., 149; Blanshard on Limitations, 88.) In Catling v. Spaulding, Lord Kenyon said he considered it clearly settled that every new item and credit in an account, given by one party to the other, was an admission of there being an unsettled account between them, to be afterwards ascertained. ■ These remarks are quoted by Chief Justice Savage, in the case of Kimball v. Brown (7 Wend., 322), arising under our former statute. Before the revision, which took effect in January, 1830, 'the only exception was that of accounts between merchant and merchant; but upon the principle of a new dealing between parties not merchants, which implied a recognition of their mutual open accounts, it was held here, as in England, that the last item within six years drew after it and saved from the statute the items otherwise barred. The section under consideration was adopted in the revision, and it was intended to declare, in a more distinct form, what was believed to be the existing law. (Revisors' notes, 3 R. S., 703.) It cannot fail to be seen that the reason on which both the statute and the previous rule are founded has no application where one of the parties, not dealing with the other, buys a debt against him from a third person; such a transaction of itself implies no recognition of existing mutual unsettled accounts between them. To illustrate: suppose A has an account against B, the last item of which accrued seven years before suit commenced ; B has one against A which accrued within three years. Here is a mutual dealing, and the account of B implies a recognition of that of A, and that the one is to compensate the other. But suppose the account which A holds is one he purchased from another person seven years before *231 suit, of which B knows nothing; or,'to put a plainer case, .and one more like the present, suppose, after the account of B accrues, A buys a claim against him, and holds no other; is there any reason in saying that the mutual dealings between the parties have recognized that claim, and so saved it from the statute of limitations ? It seems to me not. In such a case there are no mutual dealings or accounts in any just sense of the terms.
There is yet another view which seems to me entitled to great weight. But for the Code of Procedure it would have been necessary to sue the account of Grant & Allen in their names. The defendant might set off his account against Grant, because Grant was the real owner and the suit was for his benefit. The statute of set-offs in terms gives that right. But could Grant claim that it was a case of mutual, open and current accounts between the parties, so as to save the demand from the statute of limitations ? This, I think, would be making a new statute. To my mind it is plain that the plaintiffs in the suit would be barred if the statute were pleaded, and six years had been suffered to elapse since the account matured. There were no mutual accounts between them and the defendant. Now, the Code, it is true, has authorized the assignee to sue in his own name, but this provision goes to the remedy merely. It has neither created nor impaired any rights. The supreme court seems to have considered that the exemption from the statute of limitations, in the case of adverse accounts, is as broad as the right of compensation in the civil law or of set-off under our statute. That is not my view of the question.
The judgment should be reversed, and a new trial granted.
Mitchell, J.
The question is, can one having an open, mutual and current account with another purchase an open book account which a third person has against that other, and, without notifying him of the purchase, enter it into his *232 account against him, so that it shall be saved from the effect of the statute, although, if not thus assigned, it would have been barred by the statute when the action was commenced, although not barred when the assignment was made ? The cause of action arose in favor of Grant since July 1, 3848, when the Code took effect; that act is, therefore, to govern. It differs but little from the Revised Statutes. (2 R. S., 296, §23.) It provides that “in an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action shall he deemed to have accrued from the time of the last item proved in the account on either side.” (Code, § 95.)
The statute of 21 James I., ch. 16, limiting actions of account and upon the case to six years after the cause of action accrued, excepted from its operation “ such accounts as concern the trade of merchandise between merchant and merchant their factors or servants.” (Wilkinson on St. Lim., 162.) It was reenacted, in nearly the same language, in our Revised Laws of 1801 (vol. 1, p. 562), and of 1813 (vol. 1,p. 186). The revisors adopted the language used by them with a view to conform to tlie law as it was under the decisions then made (3 R. S., App., 703, § 51,2 ed.); and they refer, among other cases, to Ramchander v. Hammond, 2 J. R., 200, where it was held that the statute of limitations was a bar to an action on a promissory note, although, by the admissions on the pleadings, the action concerned the trade of merchandise between merchant and merchant, as there were no open and running accounts between the plai ntiff and defendant within the six years. The court, there speaking of the exception to the statute, say, “it must be a direct 'concern of trade: liquidated demands or bills and notes, which are only traced up to the trade of merchandise, are too remote to come within this description.” This held, that although the original account was such that it would not be affected by the statute, yet if it was liquidated, or a *233 note given for the balance, it was barred. The plaintiff then could not, by entering the note in the account current, save it; and when a note was given for part or the whole of the indebtedness, that part ceased to be any rightful part of the open, current account. Thus the case indirectly holds that a promissory note cannot form part of the mutual, open and current account intended to be protected by the statute, nor, by analogy, could a bill of exchange or a ■ mortgage or a bond; they are not proper parts of such an account. What items may form parts of such an account may be inferred from the language of the former statutes, as enlarged by the decisions upon them; they are such accounts as concern the trade of merchandise between merchant and merchant, or such as are of the like character, and between persons dealing together, although not merchants. They may therefore include charges for goods sold, services rendered, money advanced, as in the way of ti ade or business, for these all enter into the accounts of business men, as parts of their business, trade or merchandising. But they would not include matters out of the trade or profession of either party, as money lent on bond or mortgage, or due on the purchase of real estate, unless the debtor by some act of his adopted them as part of such an account. The reason is, that those items are not understood as forming parts of an account current, but as distinct transactions, out of the ■ regular line of business, and to be 'settled by themselves. The items of an account current, as thus allowable, include only dealings between the two parties—the liability for which one party contracts directly with the other. Then if each keeps an account as he ought, each knows at all times the state of the account, and the balance which he or the other party owes ; and with this knowledge it may fairly be inferred that the debtor party, at each new purchase or sale, consents to pay the balance, and thus the exception in the law is perfectly just. But no such inference can be drawn if one party is allowed, on purchasing *234 a claim against the other, to introduce it into the account without the knowledge of the other. How, under such circumstances, can it be inferred that he promised to pay a balance resulting from an item entirely unknown to him, and which he supposes he owes to another, and as to which he may claim that he has some offset against that other ? And how could it be just to make the exception in the statute in such a case? The words of the Code also indicate that the exception only applies to those matters which are the proper subjects of a current account, and where the action is for the balance on such an account; they are, “ the balance due upon a mutual, open and current accountthat is, only such an account as both parties might have kept, ande w'hich, if kept correctly, would be the same with both, and consequently would contain nothing which both did not know in the course’ of business. The other terms, also, where there have been reciprocal demands between the parties, limit the exception to cases where the demands originated between those parties or were recognized by both; without this they could not be reciprocal.
It has been argued that, in reciprocal accounts, the intention of the law was to compensate or immediately set off one account .against the other, and that thus it was just that the law should provide, as it does, that the limitation should run only from the last item of account. This may be so; but to retain the justice which it claims, it must be confined to cases where the items are between the same parties, known to both, and originating between them or adopted by them as part of their mutual account.
The judgment should be reversed without costs of appeal and a new trial be granted.
Judgment accordingly