## METROPOLITAN NAT. BANK v. JANSEN et al.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1901.)

No. 1,446.

1. APPEAL—REVIEW—SPECIAL FINDINGS OF JURY.

Special findings made by a jury, as authorized by the state practice, have the same weight and effect as special findings of fact by the court where a jury has been waived, and cannot be reviewed by the appellate court, for the purpose of determining whether there was any evidence to support them, where the bill of exceptions does not state affirmatively that it contains all the evidence.

2. SALES—WAGERING CONTRACTS—VALIDITY.

Wagering contracts on the future market price of grain, where it is shown that, notwithstanding their terms, no actual delivery of the grain was contemplated by the parties, are generally held to be illegal and void in the United States, even in the absence of an express statute declaring them invalid.

3. NOTES—IMPEACHMENT OF CONSIDERATION—COMPETENCY OF PARTIES AS WITNESSES.

The maker and indorser of a promissory note are competent witnesses to testify to facts which render such note invalid between the parties thereto, as that the consideration was illegal, as against an indorsee after maturity who took the paper with knowledge of the facts.

In Error to the Circuit Court of the United States for the District of Nebraska.

The Metropolitan National Bank of Chicago, Ill., the plaintiff in error, sued Peter Jansen and John Jansen, the defendants in error, upon a note in the sum of $5,000, dated at Jansen, Neb., November 4, 1895, but made payable at the office of C. B. Congdon & Co., the payee of the note, in Chicago, Ill. The complaint alleged a transfer of said note by C. B. Congdon & Co. to the plaintiff bank before the maturity of the note as collateral security for an indebtedness greater than the amount of the note, which Congdon & Co. owed to the bank. The defendants filed an answer to the complaint, in which they alleged, in substance, the following facts: That the only consideration for the note was a claim of Congdon & Co., the payee, that they were entitled to payment for certain advances made and commissions earned by them on account of certain alleged purchases and sales of wheat made on the Board of Trade in the city of Chicago, which purchases and sales they claimed to have made for account of Peter Jansen, one of the defendants, who was a farmer engaged in farming in Jefferson county, Neb.; that Congdon & Co. never, as a matter of fact, purchased or sold any wheat for account of Jansen, nor made any advances on account of any such purchases; that the alleged purchases and sales were mere wagers made upon the rise and fall of the market price of wheat; that at the time such alleged purchases were made it was not the intention of Jansen, or of Congdon & Co., or any of the parties who were connected with the different deals, that any wheat should be received or delivered, but that the contracts of purchase and sale so made were to be adjusted between the parties by settling the difference between the price at which the grain was purchased or sold and the market price thereof at the time said deals were closed or adjusted; and that all of said alleged contracts for the purchase and sale of wheat were merely colorable, and the contracts so made and all notes, bills, bonds, and other instruments made or given in the settlement of such colorable contracts, were utterly null and void under and by virtue of the laws of the state of Illinois. It was further alleged in the answer that the plaintiff bank was not the owner in good faith of the note sued upon, that it well knew for what purpose the note was given when it acquired the same, that the note grew out of wagering contracts on the rise and fall of grain made on the Chicago Board of Trade, and that such a note,

even in the hands of a bona fide holder or an innocent purchaser thereof, was made void by the statutes of the state of Illinois. The plaintiff bank by its reply denied the foregoing allegations of the answer, and further averred that, as Jansen had put the note in circulation, he was estopped to dispute the validity of the consideration for which the note was given so far as the plaintiff bank was concerned; it having acquired the note for value before its maturity.

On these issues the case was tried to a jury, who returned a general verdict in favor of the defendants, and by direction of the court, as permitted by the laws of Nebraska, a special verdict. By their special verdict the jury, among other things, made the following findings: That the consideration for the note was in part for moneys advanced by Congdon & Co. in settlement of differences on grain alleged to have been bought and sold by Congdon & Co. for account of Peter Jansen on the Board of Trade in the city of Chicago, and in part for commissions charged for such purchases and sales; that it was the intention of C. B. Congdon & Co., and the parties with whom they dealt for and on account of Peter Jansen, that all of the purchases and sales should be ultimately settled by an adjustment and payment of differences, instead of an actual delivery of the grain bought and sold; that in the purchase and sale of the grain on the Chicago Board of Trade by C. B. Congdon & Co. for the defendant Jansen it was the intention of the parties, regardless of the form of the agreement between them, that there was to be no actual delivery of the grain, but that such sales and purchases were to be settled by a payment of the difference between the purchase price and the market price at the date of settlement; that there was an agreement between Peter Jansen and the party or parties from or to whom the grain was purchased and sold by Congdon & Co. for account of Jansen, that there should be no actual delivery of the grain so bought and sold, but that the same should be settled by payment of differences between the purchase and selling price; that the contracts made by Congdon & Co. for account of Jansen were contracts to have or give Jansen the option to buy or sell at a future time; that the note in question was not indorsed by Congdon & Co., the payee, to the plaintiff bank before its maturity; that the original note, of which the note in suit was a renewal, was not indorsed by Congdon & Co. to the plaintiff bank before its maturity; that the plaintiff bank, at the time it received the note in suit from Congdon & Co., or the original note of which the note in suit was a renewal, had knowledge of the consideration for which the note was given, and of defenses thereto existing upon the part of Jansen against Congdon & Co. A judgment was entered in favor of the defendants below in pursuance of the special and general findings, and the case has been brought to this court for review on a writ of error.

Arnott C. Ricketts (Lowe A. Ricketts, on the brief), for plaintiff in error.

F. M. Hall and John Heasty (G. M. Lambertson, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The special findings of fact by the jury as above detailed have the same weight and must be given the same effect as like special findings by the court if a jury had been waived; and as the bill of exceptions does not state affirmatively that it contains all the testimony, but does disclose the fact that some evidence which was introduced on the trial below has been omitted and is not contained in the bill, the findings cannot be challenged in this court. It must accordingly be presumed that they rest upon sufficient evidence which was intro-

duced at the trial. E. H. Rollins & Sons v. Gunnison Co. Com'rs, 49 U. S. App. 399, 26 C. C. A. 91, 80 Fed. 692; Taylor-Craig Corp. v. Hage, 16 C. C. A. 339, 69 Fed. 581. It is to be further observed that no errors are assigned to the admission or exclusion of any items of testimony, except a general assignment that the court erred in permitting Peter Jansen, one of the makers of the note, and Charles B. Congdon, one of the indorsers of the same, to give evidence tending to impeach the consideration upon which the note was founded. A further claim is made in behalf of the plaintiff in error that the trial court erred in its instructions in assuming that the note in suit, because the same was payable in the state of Illinois, was an Illinois contract, and subject to the provisions of the statute of that state with reference to option or wager contracts. Rev. St. Ill. c. 38, §§ 130, 131. But, owing to the view that we have been compelled to adopt, it is wholly unnecessary to decide whether the trial court's opinion upon that point was right or wrong.

The special findings by the jury disclose a state of facts which would render the note uncollectible as between the original parties on general principles of law as understood and enforced at the present time. They further show that the plaintiff bank stands in the place of the payee, in that it acquired the note with full knowledge of the consideration upon which it was founded, and with knowledge of the defenses existing against it as between the makers and the payee. The special findings disclose that as between Congdon & Co. and the parties with whom they dealt in Chicago, and as between Peter Jansen and Congdon & Co., and as between him and the persons in Chicago from whom his agents made purchases or to whom they made sales, it was understood and agreed that no grain was to be delivered in fulfillment of the contracts of sale, but that such contracts were merely colorable, and were entered into simply as a device for laying wagers on the market price of wheat at a future day. Such contracts are generally held to be illegal and void in the United States, even in the absence of an express statute declaring them to be invalid. No court, we apprehend, would in these days enforce such contracts when their character is fully disclosed. Irwin v. Williar, 110 U. S. 499, 508, 509, 4 Sup. Ct. 160, 28 L. Ed. 225; Embrey v. Jemison, 131 U. S. 336, 344, 345, 9 Sup. Ct. 776, 33 L. Ed. 172; 2 Benj. Sales (6th Am. Ed.) p. 717. The only question, therefore, which arises upon the record, which we need to determine, is whether one of the makers of the note in suit and the indorser thereof were competent witnesses by whom to prove facts tending to show that the note was founded upon an illegal consideration.

In support of the contention that these witnesses were not competent, by virtue of their names being on the paper, to show that the consideration was illegal, learned counsel for the plaintiff below cite certain federal cases in which it has been held that a party to commercial paper cannot testify to an agreement made in connection therewith by which he was to assume a liability thereon different from that evidenced by the note or bill or no liability whatsoever. For example, they cite Bank of U. S. v. Dunn, 6 Pet. 51, 8 L. Ed.

316, where it was held that it could not be shown by an indorser that it was understood that his indorsement was a mere matter of form, and that he would incur no responsibility by indorsing the note upon which he had been sued; also the case of Bank of Metropolis v. Jones, 8 Pet. 12, 8 L. Ed. 850, where a similar ruling was made; also the case of Saltmarsh v. Tuthill, 13 How. 229, 14 L. Ed. 124, where it was held that in a suit between an indorsee and indorser of a bill the drawer could not be used as a witness to prove facts which, taken in connection with other facts, would invalidate the paper. But in a later case (Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204) the supreme court clearly overruled certain broad statements contained in the earlier cases, last cited, which had approved the doctrine originally announced in Walton v. Shelley, 1 Term R. 296 (a case that has been overruled in England for more than 100 years), holding in the case then under consideration (that is, Davis v. Brown) that as between immediate parties to a note or bill—that is, between maker and payee, indorser and his immediate indorsee—an agreement may be shown which will exonerate one from a liability which he plainly assumed by drawing or indorsing the note or bill. In that case the court said, inter alia:

"The general tendency of decisions here is to disregard all objections to the competency of witnesses, and to allow their position and character to affect only their credibility. * * * The holders of commercial paper who enter into agreements or transactions with the makers or indorsers affecting its validity or negotiability cannot invoke protection against the infirmity which they have aided to create. There are no considerations of commercial policy which can exclude the parties in such cases from testifying to the facts."

Mr. Daniel, also, in his work on Negotiable Instruments (volume 2, § 1217), declares that:

"The better opinion is that negotiable instruments enjoy no immunity from the general doctrines of evidence, and that any party to a written contract, negotiable or otherwise, is competent to testify as to its invalidity."

In the case at bar the defendants wished to show, in accordance with their plea, that the note was founded upon an illegal consideration. Usually, when such a defense is made, it can only be established by some party to the instrument, and to deny the right of such persons to testify would in some, and perhaps many, cases, lead to the collection of notes and bills which are founded upon an illegal or an immoral consideration. Moreover, in the present case, the jury found that the plaintiff bank was not a bona fide holder of the paper, in that it did not acquire it before maturity, and in that it took it with knowledge of the defenses existing against it in the hands of the payee. This placed the plaintiff bank in the position occupied by the original payee. We are of opinion, therefore, that both Jansen and Congdon were competent witnesses to establish illegality of consideration, and that no error was committed in permitting them to testify to facts which tended to establish that defense. The judgment below is accordingly affirmed.