FARLESS et al. v. MOREHEAD et al.

(Circuit Court of Appeals, Sixth Circuit. December 13, 1912.)

No. 2,205.

1. JUDGMENT (§ 245*)—PARTIES—EFFECT OF ERRONEOUS DESCRIPTION OF PLAINTIFFS AS PARTNERS.

Under the liberal rule of pleading prevailing in Ohio (Rev. St. Ohio 1908, §§ 5082, 5096, 5114, 5115), the fact that plaintiffs erroneously describe

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

themselves as partners will not bar their recovery in the right of any joint interest which they may have; an amendment in such case being a matter of course.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 431; Dec. Dig. § 245.*]

2. GAMING (§ 44*)—ACTION TO RECOVER MONEY LOST THROUGH BUCKET SHOP—OHIO STATUTE.

Defendants conducted a bucket shop in Ohio, with branches in charge of agents in that and other states. Such agents were without power to close deals with customers, but received margins and submitted the proposed deal to defendants in Ohio for acceptance or rejection, and, if accepted, deposited the margins in a local bank account kept by defendants, from which they were later transmitted to Ohio. *Held* that, under Rev. St. Ohio 1908, § 4270, which provides that if any person, by playing at any game or by means of any bet or wager, loses to any other person any sum of money or other thing of value, and pays the loss to the winner, he may recover the same back, a customer in Kentucky, who made deals through an agent in Indiana whereby he lost money, which he paid, could maintain an action in Ohio to recover the same back from defendants.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 90; Dec. Dig. § 44.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio; Albert C. Thompson, Judge.

Action at law by William H. Farless and another against B. H. Morehead and others. Judgment for defendants, and plaintiffs bring error. Reversed.

The court below, at the close of plaintiff's testimony, directed a verdict for defendants; hence, we must consider as the facts the best case for plaintiffs which their testimony tended to prove. It is this: Plaintiffs lived in Henderson, Ky. Defendants lived in Cincinnati, and there conducted a bucket shop, having branches or agencies scattered over Ohio and other states. Gavitt was conducting, in Evansville, Ind., a business as a "broker"; but this was, really, one of defendants' branches. Plaintiffs, persuaded thereto by Gavitt, who told them that he was representing defendants, decided to go in together in some "stock deals" for the purpose of buying and selling on margins through Gavitt and defendants. All parties understood that no stock was to be in fact purchased and received, that plaintiffs were only to put up and maintain required margins, that settlements were to be made only on market differences, and that the transactions were to be really wagers or bets on the fluctuations of the market. The course of business was that plaintiffs, usually by telephone from across the river at Henderson, but sometimes orally across his counter, instructed Gavitt to buy or sell certain stock at a certain price, and mailed or delivered to him their check for the margin; that Gavitt, who had from defendants no authority to close such deals, but only to receive and transmit to defendants offers thereof, would at once communicate with defendants, in Cincinnati, over their private wire from his office, and defendants would either accept or reject. If they accepted, Gavitt would mail or deliver to plaintiffs a bought or sold note in the form of a memorandum that "M. & Co." had bought or sold for "R. & F." a specified stock at a specified price. The record does not indicate any rejection of any of plaintiffs' deals, or what the course of practice would have been in such event. If the market went against plaintiffs, Gavitt telephoned them that they must put up more margins, whereupon they either mailed their check or dropped out. Defendants maintained a bank account in Evansville, and in this account Gavitt every day deposited to their credit the net receipts of their business through him for the day before; or, if there was a net loss, they authorized its payment to him out of this account. The net money so coming into this bank account, whether kept, as it was at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

first, in their own name, or, as it was later, in a dummy name, they from time to time caused to be transmitted to their general account in a Cincinnati bank.

Plaintiffs met with some successes, but more losses, and after an experience of eight months they found their net loss to be about $6,500. Thereupon they brought this action in the court below. In the petition they describe themselves as a partnership, and they base their claim upon an Ohio statute permitting recovery of a sum lost in gaming. The case came to trial before the late Judge Thompson and a jury, with the result above stated; and plaintiffs bring error.

H. M. Roberts, of Cleveland, Ohio, and T. B. Paxton, Jr., of Cincinnati, Ohio, for plaintiffs in error.

F. W. Cottle, of Cincinnati, Ohio, for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

DENISON, Circuit Judge (after stating the facts as above). The court below based its direction upon two grounds: First, that no lawful partnership could exist for the purpose for which plaintiffs associated themselves, and that no such partnership as theirs could maintain any suit; second, that the evidence did not show money lost and paid in Ohio, on a wager made in Ohio, but rather that the wager was made and the money lost and paid in Indiana, and hence that the Ohio statute was not effective.

[1] It is true that the plaintiffs describe themselves as a partnership, and it is equally true that the law will not recognize and give full effect to a partnership formed to engage in gambling; but we think that neither of these facts is controlling here. The existence of a technical partnership, with any of its special, legal attributes, is not involved. The fact that plaintiffs are so described in their petiton would not, under the liberal rules of pleading prevailing in Ohio, bar their recovery in the right of any joint interest which they might have. R. S. §§ 5082, 5096, 5114, 5115; F. & P. M. R. v. McPherson (C. C. A. 6) 105 Fed. 210, 211, 44 C. C. A. 449. It is immaterial for the purpose of this case whether the mutual agency, the right of survivorship control and the other peculiarities of a partnership did or did not exist. Joint enterprises which are not partnerships are well known; and if plaintiffs, with a joint interest, misdescribe themselves as partners, an amendment would be a matter of course; and, if the peculiar partnership character of the relationship is not material, no prejudice can come from the mistaken description. The statute, as quoted below, applies to "any person" who has paid money lost in this way. The Ohio statutes have a general provision that words in the singular include the plural (R. S. § 4947); and it would be frittering away this statute to say that it applied to one person who went in alone, and not to two persons who went in together and mingled their funds, even if the mingling went so far that the identity of the funds was lost and that each had only a fractional interest in the net result. Cases like Jackson v. Brick Association, 53 Ohio St. 303, 41 N. E. 257, 35 L. R. A. 287, 53 Am. St. Rep. 638, which deny relief to a partnership engaged in illegal business, depend on the same

rule which would deny relief to the loser in a wager; but that rule is abolished by this statute. The abolition is not limited to the case of a sole loser.

[2] To consider the other question involved, a quotation of the entire statute is necessary. It is as follows:

"R. S. Ohio, § 4270. If any person, by playing at any game, or by means of any bet or wager, loses to any other person any sum of money or other thing of value, and pays or delivers the same, or any part thereof, to the winner, the person who loses and pays or delivers may, at any time within six months next after such loss and payment or delivery, sue for and recover the money or thing of value so lost and paid or delivered, or any part thereof, from the winner thereof, with costs of suit, by civil action founded on this chapter, before any court of competent jurisdiction."

It will be noticed that the statute contemplates, as conditions precedent to a recovery, three things: The making of a bet, the losing of money thereby, and the payment of such loss. The case has been argued as though the statute, on its face, provided that one or two or three of these things must have been done in Ohio, in order that this action should be maintainable; but it carries no such express condition. Such limitation can be found only by reading it into the law through the operation of the familiar rule that a statute does not have extraterritorial effect (Endlich on Interpretation of Statutes, § 169; Shaw v. Railway [C. C. A. 6] 173 Fed. 746, 752, 97 C. C. A. 520); and the problem here is whether plaintiffs can recover without giving to the statute a territorial effect either beyond the power or beyond the presumed intent of the Legislature. If the language of a statute is broad enough to cover a particular transaction, we suppose that whether the Legislature had power to reach that transaction and whether it intended to do so may be distinct questions. The presumption of nonintent would seem to follow from a lack of power, but it is not necessarily true, conversely, that, from power, intent is presumed. So both power and intent should be examined.

It is an established rule that a statute of one state cannot create, from acts done and completed in another state, between persons in that other state, a cause of action otherwise nonexisting; nor can it take away a cause of action duly arising and existing in the state where the actors were and the acts were done. To do either would be a taking of property. Steamboat Ohio v. Stunt, 10 Ohio St. 582; 587.

While this is the rule, it might not apply, in its broadest aspects, to the question of power we are now considering, even if nothing had been done in Ohio in the course of the gaming or the payment, and it appeared only that defendant was found in Ohio with the money there in his possession and was there sued. It may well be the Legislature of Ohio would have power to provide that one of its citizens who had gone outside of the state and procured money or property by means which were unlawful in Ohio, and presumably unlawful at the place of occurrence, should be liable, in the courts of Ohio, to return the money or property so wrongfully acquired; but, however this may be, we think it at least must be true that the power extends

to a transaction where a defendant was in Ohio at the time of making the wager, in Ohio gave the sanction without which it could not have been closed, from Ohio directed the temporary receipt and custody of the money, and to Ohio, a little later, brought the money— in short, where the whole wager and the payment of the loss thereon constituted only an incident appurtenant to the general business carried on by defendants within the state. We think we may well dismiss without further consideration the power of the Ohio Legislature to pass an act which would permit a recovery in this case, and say that such power is clear.

What, then, is the fair and reasonable conclusion as to the intent of the Legislature, to be drawn from the statute itself, from other statutes, and from common knowledge regarding the subject-matter? The acts here involved being perfectly described by the broad language of the statute, should we presume that the Legislature did not intend to reach such acts because it would be conscious of its territorial limitations, or because it would not concern itself with acts done in other states, or for any other reason? As bearing on this question of intent, we must first observe that the statute does not, in the broadest sense of the term, *create* any cause of action (as was created in favor of a stranger in the statutory application sought in Jacob v. Clark, 115 Ky. 255, 72 S. W. 1095). One who wins a bet, and pursuant to the bet receives money or property, does not get an indefeasible title; if the loser can do so peaceably, he may retake the money or property, and his title would be good. The money paid under such a bet having been paid without consideration, the loser could (except for the rule of public policy which forbids a remedy) maintain an action for money had and received. The only thing preventing such prosecution is the obstacle created by the legal rule that the law will not listen to a plaintiff in such a plight; so in one sense, and a very fair sense, a statute like that under consideration does not create any nonexistent property right. It removes an obstacle to the assertion of a right. In effect (and even giving it a construction broader than we adopt in this case) the statute only says to citizens of Ohio: "When you are sued in the courts of this state to recover money you have wrongfully received, the fact that you won it by gaming shall no longer be a good defense."

These considerations are of force in determining the intent. They tend to convince that there is nothing unnatural or abnormal in supposing that the Legislature intended at least to reach a situation like that shown by the record.

It is quite true that the Ohio Legislature should probably be presumed not to be primarily interested in the doings of the plaintiffs, in Kentucky, or of Gavitt, in Indiana; but this does not mean that it had no concern with what defendants were doing in and from Ohio, just because they were thereby reaching, through Indiana, into Kentucky. It had a legitimate interest in preventing gambling in Ohio; and whether or not an express provision that a plaintiff, living in another state, who had wagered and lost money at a gambling establishment in that state, which was a branch of the main gambling es-

tablishment located in Ohio, might bring a suit in Ohio and recover his money, should be thought to be fairly pertinent·to the suppression of gambling in Ohio, we need not decide, because, as above pointed out, this case does not go so far.

We may lay aside all questions of nicety as to which state would have been the place of contract, if the contract had been one cognizable by the law, and 'we may assume that Gavitt was defendants' agent for the transmission of the acceptance, and that the acceptance was not complete until Gavitt, in Indiana, delivered the bought or sold note; and it still remains true that the personal act of acceptance·by defendants took place in Ohio, and that this was an indispensable step in the completion of the wager. Without it, the transaction would have stopped at that point, and could not have been consummated. Further, as noticed in discussing·the question of power, the things done outside of Ohio were only incidental to the main business carried on within the state. There seems to be no reason why the Legislature would not have intended to direct this blow at this precise situation, if its attention had been specially called thereto. No doubt it has used apt words to include this result; and we hold that it has accomplished this result.

We find confirmation of this legislative policy in other sections of the statute (86 Ohio Laws, 12–14), which, though later in date than section 4270, have been re-enacted with it in the present General Code (sections 5965, 1371–1380), and seem to be part of a continuing and general policy. These other sections provide fine and imprisonment for one who keeps a bucket shop, or who, from such bucket shop, transmits by wire to a nonresident of the state information concerning a bucket shop deal. The penalties are imposed even upon certain nonresidents who cause a violation of the act within the state. It is declared, also, that the offense is completed by the mere offer to sell or buy, whether accepted or not, and may consist solely in keeping a place for making or offering to make wagering contracts, "whether such contract is to be performed within or without this state." These provisions clearly indicate that the state of Ohio does not exclude from its field of regulation all wagers not wholly made or completed within this state.

There is another consideration. We should not unnecessarily presume an intent and adopt a resulting construction which make a statute largely ineffective, because easy to evade. If a defendant carrying on, in Ohio, such a business as here appears, and accumulating at its head office money won by gaming, and maintaining a system of branches or feeders in adjoining states, can avoid all liability as to the transactions initiated outside the state by providing that some formality customarily essential to the closing of a contract shall be done outside the state, then, as to matters initiated inside the state, it would require much less ingenuity than has been expended in this business to devise a plan by which such deal must be approved by an associate outside the state, and so a defendant would escape in any event and at all times. We are, as the rule requires, strongly inclined to adopt that reasonable construction which will make the stat-

ute completely effective, rather than one which makes it partially inoperative.

We do not overlook those decisions, of which Cruthers v. State, 161 Ind. 139, 145, 67 N. E. 930, and State v. Gritzner, 134 Mo. 512, 527, 36 S. W. 39 (both gambling cases), are typical, holding that a penal offense cannot be committed partly in one state and partly in another, though this rule is seemingly not always followed with regard to similar offenses (Com. v. Schmunk, 207 Pa. 544, 56 Atl. 1088, 99 Am. St. Rep. 801). The former cases can well be distinguished from the present, both because of the stricter rule of construction applicable to criminal statutes, and because otherwise the offender might be subject to double punishment as for two crimes, while obviously there is but one payment of such a loss, and defendants would be protected from undue civil liability by the ordinary rule against a double collection. At any rate, these decisions do not persuade us that the Ohio Legislature intended not to reach these defendants civilly in the very matter in which it has made them liable criminally.

Nor do we find a different result necessary because a large part of the loss here sued for was composed of "remargins," or further margins, put up by plaintiffs to save an existing "deal" from being "closed out," though these margins were paid to Gavitt, in Indiana, on his demand, and without any specific action in Ohio. They were incidents in carrying out the wager already made. They affected the amount of the loss under the wager. They did not constitute new and different transactions separable from the original. A legislative intent which would reach the main thing, the "stock deal," would not fail to include the appurtenant and supplementary "remargins."

Our conclusion that plaintiffs' case should be considered as within the intent of the Ohio statute is that of the majority of the court; as to the right of plaintiffs to be heard under the statute, and as to the legislative power to reach such a case, we find ourselves in entire agreement.

The plaintiff was entitled to go to the jury, and the judgment must be reversed, with costs.