CARPENTER v. BEAL-McDONNELL .& CO. et al,

(District Court, E. D. Arkansas, W. D. March 4, 1915.)

1. GAMING ⊂═19—OBLIGATIONS OR SECURITIES GIVEN FOR GAMBLING CONSIDERATIONS—VALIDITY.

In an action to enforce a note or security given in settlement of a gambling debt, which by statute is absolutely void,· the illegality of the consideration may be shown as a defense.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 39-43; Dec. Dig. ⊂═19.]

2. GAMING ⊂═14—"GAMBLING CONTRACT"—"WAGERING CONTRACT"—DEALING IN FUTURES.

Dealing in futures, when both parties intend that there shall be no deliveries, but only a settlement of differences between the contract and the market price, are "wagering" or "gambling contracts" and illegal and void by the common law.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 25, 26; Dec. Dig. ⊂═14.

For other definitions, see Words and Phrases, First and Second Series, Gambling Contract; · Wager.]

3. GAMING ⊂═46—GAMBLING CONTRACT—PERSONS WHO MAY PLEAD INVALIDITY.

A contract or conveyance based on a gambling transaction, which is absolutely void by statute or by the common law, may be attacked, not only by a party to it, but by any one privy to him in blood or estate.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 93, 94; Dec. Dig. ⊂═46.]

4. JUDGMENT ⊂═817—FOREIGN JUDGMENT—COLLATERAL ATTACK.

Pen. Laws N. Y. (Consol. Laws, c. 40) § 933, declaring void judgments the consideration for which is "money or any other valuable thing won by the playing at any game whatsoever or won by the betting on the hands or sides of such as do play at any game," does not apply to judgments based on other gambling transactions, such as dealing in futures, and, in the absence of any such statute, a judgment of a New York court obtained in a suit in rem by default on substituted service, the res being within the jurisdiction of the court, although the res consisted of securities pledged in such a deal must be presumed valid in that state, and under the full faith and credit clause of the federal Constitution cannot be collaterally attacked in a court in another state.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1456, 1457; Dec. Dig. ⊂═817.]

In Equity. Suit by Nathaniel L. Carpenter against Beal-McDonnell & Co. and another. On motion to strike out part of answer. Motion sustained.

This is a bill in equity against the defendants, composing the copartnership of Beal-McDonnell & Co., to compel them and their officers to make a transfer to the plaintiff of certain certificates of membership in said firm.

The facts as set out in the bill are: That the defendants are members of the joint-stock company or copartnership engaged in the wholesale dry goods business in the city of Little Rock. That it was organized by written agreement providing that the interests of each member or partner should be represented and evidenced by certificates showing the number of shares owned by such partner of a total of 3,000 shares of the par value of $100 each. That the business should be conducted under the firm name of the defendants, and that there should be issued by the president of the firm, attested by the secre-

tary, certificates to each member or partner showing the number of shares he is entitled to, which certificates and the interest they represent shall be transferable by assignment in writing upon the certificates and surrender of the same to the secretary of the firm, whereupon new certificates shall be executed to the transferees in the same manner as the original certificate, and that such transferee shall be entitled to all the rights and privileges of an original holder, and subject to all the liabilities of the firm that shall accrue after such transfer, and that the secretary shall keep a certificate book and register the issuance and transfer of such certificates, and none but those appearing by said records as being holders of certificates shall be entitled to dividends or to vote on the officers of such partnership. The articles also provide for a certain form of certificate to be issued, with a blank certificate of assignment on the back thereof. The agreement further provides that the owner of such assignment shall have the right to transfer, sell, or hypothecate the same without the consent of the other owners of certificates or the officers, but that no person shall be entitled to exercise the rights of a partner or share in the dividends, unless his certificate has been recorded in the registry book of the firm. It further provides that such certificates may be levied on by writs of execution or other legal process in the same manner as shares of stock in a corporation may be levied upon, and that the purchaser at such sale of the shares of a partner in such business, or at any sale by virtue of any contract made by the partner, shall be entitled to have issued to him, upon producing proper authority of such purchase, the certificate or certificates of such shares. Provision is made for the management of the business of the copartnership by an executive committee, and for the election of certain officers, and that the profits of the business shall be divided annually among the certificate holders according to their several interests. That upon the organization of the firm J. S. McDonnell became the owner and holder of certificates Nos. 15 and 16, each representing 100 shares; the whole being of the par value of $20,000. That this plaintiff and certain other persons mentioned in the bill were partners doing business as brokers in the city of New York under the firm name of N. L. Carpenter & Co. That the said McDonnell, being indebted to them in a large sum of money, over $23,000, had pledged these certificates with said firm, having properly indorsed them as required by the articles of copartnership; that on October 20, 1913, N. L. Carpenter & Co. instituted an action in the Supreme Court of the State of New York, for the county of New York, which is a court of general jurisdiction of said state, against J. S. McDonnell, the pledgor, asking for a foreclosure of the certificates which they had in their possession in the city of New York. That the said McDonnell being a nonresident of the state of New York, no personal service could be had on him in that state, an order was made by that court for substituted service to be made in the city of Little Rock, Ark., in accordance with the laws of the state of New York. That such personal service was made on the said McDonnell in the city of Little Rock, state of Arkansas, and due proof thereof made in conformity with the laws of the state of New York. That on the return day said McDonnell failed to appear or plead to said complaint, and thereupon, on the 14th day of April, 1914, the case being duly reached, a judgment by default was rendered in said cause, decreeing that the pledged certificates be sold at public auction in the city of New York by a referee appointed for that purpose, in conformity with the laws of the state of New York, and that the said referee execute to the purchaser of such certificates a transfer and conveyance thereof and all the right, title, and interest of the defendant J. S. McDonnell in and to the same and in and to the share of the capital of Beal-McDonnell & Co., and that his equity of redemption be forever foreclosed. That out of the proceeds the costs of the action be paid, and the sum of $23,315, with interest be paid to the plaintiffs; that being the amount found due them on the transaction for which the certificates were pledged. That on May 8, 1914, the referee, in pursuance of said judgment, sold said certificates at public sale, and Nathaniel L. Carpenter, the plaintiff in this action, became the purchaser thereof. That on the 21st day of May, 1914, the referee having reported to the court his action and sale in pursuance of the decree, the sale was confirmed by the court, and

thereupon the said referee made the transfers of the certificates to this plaintiff in conformity with the decree of the court.

Exemplified copies of all the proceedings in the Supreme Court of the state of New York are filed as exhibits with the bill.

The complaint then charges that plaintiff caused said certificates, with said transfers, assignments, and conveyances to him, to be presented to the president and secretary of said Beal-McDonnell & Co. at their office in the city of Little Rock, Ark., together with a properly exemplified copy of the record of proceedings had in the Supreme Court of the state of New York, and requested cancellation of said certificates and the issuance to him of new certificates representing the said transfer, and also the payment to him of all dividends which had been earned and declared on said shares of J. S. McDonnell, which they refused to do.

The defendants filed an answer to this complaint, admitting the organization of the firm of Beal-McDonnell & Co., as set out in the complaint, and alleged that since then the name had been changed to Beal-Burrow & Co., but denied all other allegations in the complaint, and denied the jurisdiction of the New York court to enter the decree mentioned in the complaint on substituted service. They also pleaded that, prior to the institution of this suit, the said J. S. McDonnell had sold his interest in the firm of Beal-McDonnell & Co. to the defendant James L. Dibrell, who requested the officers of said firm to transfer to him the certificates issued to the said McDonnell, including those set out in the complaint; that he was unable to surrender said certificates Nos. 15 and 16, and said firm declined to issue him new certificates, but made entries of said sale and transfer of the interests of the said J. S. McDonnell to James L. Dibrell upon the proper books of the firm.

The defendant James L. Dibrell, in addition to the answer which was filed by him and all the other defendants as aforestated, filed a separate answer, in which he sets up a purchase of the certificates in controversy from McDonnell, and further charges that if the proceedings in the Supreme Court of the state of New York, as alleged in the complaint, were had, they were founded on a demand which grew out of agreements for the sale of cotton on margin, commonly called "dealings in futures," which were made and to be performed wholly or in part in the state of Arkansas, in which dealings it was never intended by the parties thereto, or either of them, that an actual delivery of cotton should be made, but, on the contrary, it was the intention of one or both of the parties to said transaction to receive or pay the difference between the agreed price and the market price at the time fixed for settlement, and that the said dealings were gambling contracts and are expressly prohibited and made illegal and void under the laws of the states of Arkansas and New York, and any judgment thereon is void under the laws of Arkansas and New York.

The plaintiff has filed a motion to strike out that part of the additional answer of the defendant Dibrell which pleads that the consideration of the transaction between McDonnell and N. L. Carpenter & Co. arose out of a gambling transaction.

Cockrill & Armistead, of Little Rock, Ark., for plaintiff.

Mehaffy, Reid & Mehaffy and Moore, Smith & Moore, all of Little Rock, Ark., for defendant.

TRIEBER, District Judge (after stating the facts as above). [1] There are two contentions made by counsel for plaintiff which can be disposed of without incumbering this opinion with a large number of citations: (1) That the contract alleged to have been a mere wager, having been fully executed by the delivery of the certificates, cannot be disturbed; (2) that if the plaintiff does not require the aid of an illegal transaction to establish his claim he may recover, although the consideration of his claim was unlawful.

These rules are no doubt correct in a certain class of cases, but are clearly inapplicable when the action is to enforce a note or security given in payment of a debt which, either by statute or the common law, are absolutely void. That gambling debts belong to that class cannot be denied. The note or security can, in the nature of things, only be given after the contract therefor had been made or the debt incurred, and, in an action to enforce them, the plaintiff establishes his claim prima facie by the mere production of the instruments without further proof. If the defendant's mouth is closed, as claimed by counsel, because the contract had been executed by the execution and delivery of the note or securities, and the plaintiff makes out his prima facie case by the mere production of them without any necessity of showing the consideration, the law declaring all such instruments void is no better than a piece of waste paper. That such a plea is good, see Embrey v. Jemison, 131 U. S. 336, 348, 9 Sup. Ct. 776, 33 L. Ed. 172; Mackin v. Shannon (C. C.) 165 Fed. 98, and authorities there cited. As stated in Wooden v. Shotwell, 24 N. J. Law, 789:

Statutes declaring such contracts void can only be enforced by permitting the party, though he is in pari delicto, to claim the invalidity of the transaction.

The same rule has been applied in cases involving usury statutes. Houghton v. Burden, 228 U. S. 161, 169, 33 Sup. Ct. 491, 57 L. Ed. 780; Ringer v. Virgin Timber Co. (D. C.) 213 Fed. 1001.

The two more serious propositions raised are:

(1) Can a third person, privy in estate to the original maker of the contract, set up the defense that the pledge was delivered by his grantor to secure a gambling transaction?

(2) Can the judgment of a court of New York in an action in rem, the res being within the court's jurisdiction, obtained on substituted service, without the defendant's appearance, be collaterally attacked in a foreign court upon the ground that the consideration of the contract was a gaming transaction?

[2] I. That dealings in futures, when both parties intend, as alleged in that part of the answer sought to be stricken out, that there should be no deliveries, but only a settlement of the differences between the contract and the market price at a time fixed for executing the contract, are nothing but wagering or gambling contracts, which are illegal and void as being against public policy, even without the aid of the statute, is as well settled as any proposition of law. Irwin v. Williar, 110 U. S. 499, 510, 4 Sup. Ct. 160, 28 L. Ed. 225; Embrey v. Jemison, supra; Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183; Metropolitan National Bank v. Jansen, 108 Fed. 572, 47 C. C. A. 497; Cleage v. Laidley, 149 Fed. 346, 79 C. C. A. 284; Ware v. Pearsons, 173 Fed. 878, 98 C. C. A. 364.

[3] The contract or conveyance being absolutely void, any party privy in estate or blood may attack it, for the simple reason that, the conveyance being void, nothing passed by it. The question has been frequently before the courts in cases where a statute declares bonds, bills, and conveyances void if in violation of the usury statutes, and the great weight of authority is to the effect that the invalidity may be

pleaded by any party privy in blood or estate to the vendor, mortgagor, or assignor. Lloyd v. Scott, 4 Pet. 205, 230, 7 L. Ed. 833; Crawford v. Nimmons, 180 Ill. 143, 54 N. E. 209; Lillenthal v. Champion, 58 Ga. 162; Post v. Dart, 8 Paige (N. Y.) 639; Cole v. Savage, 10 Paige (N. Y.) 592; Maloney v. Eaheart, 81 Tex. 284, 16 S. W. 1031; Brooks v. Avery, 4 N. Y. 229; Trusdell v. Dowden, 47 N. J. Eq. 396, 20 Atl. 972; Camden Fire Ins. Co. v. Reed (N. J. Ch.) 38 Atl. 667; Cobe v. Summers, 143 Mich. 117, 106 N. W. 707; Washington Nat. B. & L. Ass'n v. Andrews, 95 Md. 696, 53 Atl. 573.

In Pipkin v. Williams, 57 Ark. 242, 21 S. W. 433, 38 Am. St. Rep. 241, it was held, citing numerous authorities, that if a statute declares a conveyance of the homestead by the husband, without the wife joining in the deed, as required by statute, void, a third person, privy in estate, may attack such a conveyance. To the same effect is Bank of Harrison v. Gibson, 60 Ark. 269, 277, 30 S. W. 39. In the last case a junior mortgagee filed a bill to cancel a prior mortgage upon the ground that it was upon the homestead of the mortgagor, and the wife had not joined in its execution in the manner prescribed by the laws of the state, and it was held that it was void as against the junior mortgagee, whose mortgage was properly executed.

[4] II. Can the judgment of a New York court, obtained in a proceeding in rem by default on substituted service, be collaterally attacked in a court of another state upon the ground that the consideration of the judgment is a wagering transaction, such as is set out in the answer?

The validity of this judgment on its face was sustained by this court orally on a motion to dismiss the complaint upon the authority of Merritt v. American Steel Barge Co., 79 Fed. 228, 234, 24 C. C. A. 530 (8th Circuit), and Ryan v. Seaboard, etc., R. R. Co. (C. C.) 83 Fed. 889.

Article 4, § 1, of the Constitution of the United States, provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

To carry this provision into effect, Congress, by the act of May 26, 1790 (1 Stat. 122, c. 11; Rev. Stat. § 905 [Comp. St. 1913, § 1519]), provided that the records and judicial proceedings of any state or territory, when authenticated as prescribed by the act, "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

That under the laws of the state of Arkansas such a judgment would be absolutely void was, for the purpose of this motion, not controverted.

While it is true that courts of one state will not enforce contracts which are void, when against the public policy of that state, although they are valid under the laws of the state where made and to be executed (Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539), this rule does not apply to judgments which are protected by the constitutional provision above set out.

There are some authorities relied on by counsel for both parties which, in the opinion of the court, when read in the light of the facts to which the principles there announced were applied, are distinguishable, and therefore inapplicable to the issues involved in the instant case.

In Fauntleroy v. Lum, 210 U. S. 230, 28 Sup. Ct. 641, 52 L. Ed. 1039, claimed on behalf of plaintiff to be conclusive, the judgment attacked was not based on the original transaction, but on an award of arbitrators made in pursuance of an agreement of the parties. The defendant had been duly served with process within the jurisdiction of the Missouri court, in person, and defended the action in that court by pleading that the award was based on a transaction made in the state of Mississippi for futures to be settled on the difference of prices, without any actual deliveries to be made, and which contracts were void and unenforceable in the courts of that state. Evidence to establish that fact was offered by him on the trial in the Missouri court, but by that court excluded, and a final judgment rendered against him. No appeal was taken from that judgment, and suit was instituted on it in a court of the state of Mississippi, which declined to enforce it. Mr. Justice Holmes, who delivered the opinion of the court reversing the Supreme Court of Mississippi, said on page 237 of 210 U. S., on page 643 of 28 Sup. Ct. (52 L. Ed. 1039):

"Whether the award would or would not have been conclusive, and whether the ruling of the Missouri court upon that matter was right or wrong, there can be no question but that the judgment was conclusive in Missouri on the validity of the cause of action."

And again, on page 238 of 210 U. S., on page 643 of 28 Sup. Ct. (52 L. Ed. 1039):

"In this case the Missouri court no doubt supposed that the award was binding by the laws of Mississippi. If it was mistaken, it made a natural mistake. The validity of its judgment, even in Mississippi, is, as we believe, the result of the Constitution as it always has been understood."

Nor are Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366, and the other cases involving the validity of decrees in actions for divorce, rendered on constructive service in courts other than where the parties actually resided, and which are relied on by the defendant, in point. What was determined in those cases was that, where the jurisdiction of the foreign court depends upon domicile, that question is open to re-examination in the courts of another state asked to give the judgment full faith and credit, in order to determine whether the court which rendered the decree had jurisdiction—a question always open. Burbank v. Ernst, 232 U. S. 162, 163, 34 Sup. Ct. 299, 58 L. Ed. 551.

Nor is Wisconsin v. Pelican Insurance Co., 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239, relied on by the defendant, applicable to the issues involved herein. There the court had to determine its own jurisdiction, which, by the Constitution, is limited to controversies of a "civil nature," and it was held that an action to recover a penalty is not "a controversy of a civil nature," and it was its duty to inquire what the cause of action which it is called on to adjudicate was in order to

determine whether it had jurisdiction of the cause, and to ascertain that fact it could examine the cause upon which the judgment was based. This is fully explained in Fauntleroy v. Lum, supra, 210 U. S. 236, 28 Sup. Ct. 641, 52 L. Ed. 1039.

The full-faith and credit clause of the Constitution has been construed so many times, and so uniformly, by the Supreme Court, that there is no room for doubt as to what effect is to be given to it at this day. The leading cases on that subject were determined over 100 years ago (Mills v. Duryee, 7 Cranch, 481, 3 L. Ed. 411; Hampton v. McConnel, 3 Wheat. 234, 4 L. Ed. 378), and followed ever since; the latest reported case being Roller v. Murray, 234 U. S. 738, 745, 34 Sup. Ct. 902, 58 L. Ed. 1570. The rule thus established is that a "judgment of a state court should have the same credit, validity, and faith in every other state in the United States which it has in the state where pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States."

It is equally well settled that the Constitution does not require that any greater force be given to a judgment of another state than the law of the state, where pronounced, gives it. Board of Public Works v. Columbia College, 17 Wall. 521, 529, 21 L. Ed. 687; Tilt v. Kelsey, 207 U. S. 43, 57, 28 Sup. Ct. 1, 52 L. Ed. 95; Converse v. Hamilton, 224 U. S. 243, 253, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292.

As stated in the Columbia College Case:

"Any other rule would contravene the policy of the Constitution of the United States on that subject."

The important question, therefore, to be determined, is: What is the effect of this judgment in the courts of the state of New York? Is it conclusive, or can it be avoided in a collateral proceeding upon the ground set up in the answer of the defendant Dibrell, sought to be stricken out.

The statutes of New York on the subject of wagers, bets, and stakes are as follows:

"Sec. 991. All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful.

"Sec. 992. Contracts on account of money or property wagered, bet or staked are void. All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in the preceding section, shall be void.

"Sec. 993. Securities for money lost at gaming void. All things in action, judgments, mortgages, conveyances, and every other security whatsoever, given or executed, by any person, where the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatsoever, or won by betting on the hands or sides of such as do play at any game, or where the same shall be made for the repaying any money knowingly lent or advanced for the purpose of such gaming or betting aforesaid, or lent or advanced at the time and place of such play, to any person so gaming or betting aforesaid, or to any person who, during such play, shall play or bet, shall be utterly void, except where such securities, conveyances or mortgages shall affect any real estate, when the same shall be void as to the grantee therein, so far only as hereinafter declared."

The act of April 9, 1913 (Laws of New York 1913, c. 236), amending the penal laws of the state in relation to bucket shops, is a penal act entirely, and contains nothing in reference to civil actions. It makes it a felony to do any of the acts forbidden by that statute; but it does not declare judgments and conveyances based on such transactions void, as does section 993 of the Code. Hence the question is: Does section 993 apply to transactions of the nature set out in the answer?

Neither counsel nor the court have been able to find any authoritative ruling by the New York courts on this question (i. e., the validity of a judgment founded on such a cause of action); hence it must be determined on elementary principles of law, aided by the precedents established by courts of other states, which have similar statutes.

In the absence of a statute invalidating certain judgments, a judgment by a court having jurisdiction of the parties and subject-matter is, when collaterally attacked, conclusive as to all media concludendi, including a judgment based on a gaming or other illegal consideration. With some exceptions, which are immaterial in this case, it is equally well settled that the original cause of action is merged in the judgment. Permitting a judgment to be attacked for causes other than that of jurisdiction or fraud is an exception in the law, in the nature of a proviso, and must be strictly construed. Nor can a person, in the absence of a statute to that effect, recover money lost at gaming, as the courts will aid neither party to an illegal transaction. The authorities on the question of recovering money lost on wagers of this nature, under statutes similar to those of New York (section 993), uniformly hold that such statutes do not apply to ordinary wagers or dealings in futures, where neither party intends that there shall be a delivery, which are treated as wagers, but apply only to money lost by betting at gaming or a gambling device. Connor v. Black, 132 Mo. 150, 33 S. W. 783; Sondheim v. Gilbert, 117 Ind. 71, 18 N. E. 687, 5 L. R. A. 432, 10 Am. St. Rep. 23; Boyce v. O'Dell Comm. Co. (C. C.) 109 Fed. 758 (under the Indiana statute); Dows v. Glaspel, 4 N. D. 251, 60 N. W. 60; Shaw v. Clark, 49 Mich. 384, 13 N. W. 786, 43 Am. Rep. 474.

In Connor v. Black it was said:

"It will be observed that the statute only permits money or property to be recovered which has been lost 'at any gaming or gambling device.' While this transaction was a wager, and the law will not, in the absence of an express statute, aid either party in enforcing it, it is not a 'gaming or gambling device,' within the meaning of section 5209. The words 'gaming' and 'gambling device' by common use and interpretation had acquired a certain signification long prior to the enactment declaring transactions like this to be gambling."

In Shaw v. Clark, Judge Cooley, delivering the opinion of the court, said:

"In common speech 'gambling' is applied to play with stakes at cards, dice, or other contrivance, to see which shall be the winner and which the loser. A contract for the purchase of options is not gaming, within the meaning of this term. In form it is the purchase of a commodity to be delivered at a future date, and it only resembles gaming in that the parties take a chance of gain or loss without intending that the sale which they nominally make shall ever become a legitimate business transaction. 'Betting,' in common speech, means the putting of a certain sum of money or other valuable thing at stake on the happening or nonhappening of some uncertain event. A purchase of options

is not betting in this sense, though it resembles it in the fact that risks are taken on uncertain events, and that the tendency to those engaged in it is demoralizing. * * * We have no idea that the purchase of options was in the mind of the Legislature when passing the statute against betting or gaming."

In Lester v. Buel, 49 Ohio St. 240, 30 N. E. 821, 34 Am. St. Rep. 556, and Farless v. Morehead, 201 Fed. 310, 119 C. C. A. 548 (also under the Ohio statute), a different conclusion was reached, but it was based on the statutes of that state, which are similar to those of Arkansas, and include all wagers, as will be seen by reference to sections 4270 and 6934a, Revised Statutes of Ohio, set out in the opinion of the court in Lester v. Buel.

While none of the cases cited involved a judgment, they were actions to recover money lost on wagers of this nature under statutes similar to section 993 of the New York Code. By reference to the New York statutes, it will be noticed that while section 992 declares "contracts on account of money or property wagered, bet or staked" void, section 993, which is the section including judgments and conveyances, limits the invalidity to cases where the consideration was "money or other valuable thing won by playing at any game whatever," etc., but does not include ordinary bets or wagers. The maxim, "Expressio unius est exclusio alterius," applies.

As the judgment herein relied on was not on a transaction based on any of the acts mentioned in section 993 of the New York Code, which is the only statute of that state affecting the validity of judgments based on gambling transactions, it is not void under the laws of that state, and being entitled, under the Constitution of the United States, to the same faith and credit it would receive in the courts of the state of New York, is not subject to attack in this collateral proceeding.

The court has not overlooked the fact that in Minzesheimer v. Doolittle, 60 N. J. Eq. 394, 45 Atl. 611, and Campbell v. New Orleans National Bank, 74 Miss. 526, 21 South. 400, 23 South. 25, the courts refused to enforce judgments of courts of other states based on such transactions upon the ground that they contravened the public policy of their respective states. But, with the highest respect for those courts, this court feels unable to follow them, in view of the uniform rulings of the Supreme Court of the United States hereinbefore cited.

The motion to strike out that part of the answer is sustained.