## FAUNTLEROY v. LUM..

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 215.　Argued April 27, 28, 1908.—Decided May 18, 1908.

A judgment is conclusive as to all the *media concludendi*, and it cannot be impeached either in or out of the State, by showing that it was based on a mistake of law.

A judgment of a court of a State in which the cause of action did not arise, but based on an award of arbitration had in the State in which the cause did arise, is conclusive, and, under the full faith and credit clause of the Federal Constitution, must be given effect in the latter State, notwithstanding the award was for a claim which could not, under the laws of that State, have been enforced in any of its courts.

80 Mississippi, 757, reversed.

THE facts are stated in the opinion.

*Mr. Shepard Barclay,* ·with whom *Mr. Robert L. McLaurin,
Mr. Amos A. Armistead, Mr. E. L. Brien, Mr. Garner Wynn
Green* and *Mr. Marcellus Green* were on the brief, for plaintiff
in error:

By allowing a plea to be interposed in the Mississippi courts
in an action upon a Missouri judgment, which was not allow-
able in the courts of Missouri, both the Federal Constitution
(Art. IV, § 1)', and § 905, Revised Statutes of the United States
were violated, in that full faith and credit to it were denied, and
the faith and credit to which it was entitled in Missouri were not
given to it in Mississippi.    *Hampton* v. *McConnel,* 3 Wheat. 235;
*McElroy* v. *Wagner,* 13 Pet. 324; *Christmas* v. *Russell,* 5 Wall.
301, and cases there cited; *Harding* v. *Harding,* 198 U. S. 317;
*Haddock* v. *Haddock,* 201 U. S. 567, and cases cited; *Wiscon-
sin* v. *Pelican Insurance Co.,* 127 U. S. 265, and *Provision Co.*
v. *Davis,* 191 U. S. 374, discussed as not in conflict with the
cases above cited.

The effect of this judgment in Missouri differs from that under
the law in Mississippi, for while under the Missouri decisions in
determining the effect of this transaction the Mississippi stat-
utes would be looked to and would control, *Gaylord* v. *Duryee,*
95 Mo. Appeals (1902), 579, the effect of the Missouri judgment
when rendered may be appealed from, and reversed, and what
its effect is when suit is brought thereon in Missouri, and what
pleas are sufficient answer thereto, are to be determined by
the statutes and decisions of that State.    *Wilkerson* v. *Whitney,*
7 Missouri, 296, and Rev. Stat. Mo., 1889, 1262, § 52, enacting
that only judgments by confession shall be void when based
on a gambling transaction, and that when rendered by default,
or upon issue joined, there can be no second trial of that which
was interposed in the first trial and decided adversely.

Under the Federal Constitution and § 905, Rev. Stat., as
uniformly interpreted, the same effect as was shown to exist
in Missouri under the laws and decisions thereof, the domicile
of the rendition of the judgment, must, under the supreme law
of the land, be given to it in Mississippi.

In Missouri the merits of the controversy, the nature of the consideration are forever concluded by the judgment herein there rendered. Under the rule in this court announced by Mr. Chief Justice Marshall, reiterated by Mr. Justice Story, and since integrated as a funadmental principle into constitutional law, the test of the effect vouchsafed to this judgment in Mississippi is its effect under the laws of Missouri. There is no qualification or exception. See *Draper* v. *Gorman*, 8 Leigh, 628.

*Mr. T. C. Catchings* and *Mr. O. W. Catchings*, for defendant in error, submitted:

No matter what may have been held, at one time, at present the essential nature and real foundation of a cause of action are not changed by recovering judgment upon it, and the technical rules which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay, do not preclude a court to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it. *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 286. The grant of judicial power was not intended to confer upon the courts of the United States jurisdiction over a suit or prosecution by one State of such a nature that it could not, on the settled principles of public and international law, be entertained by the judiciary of the other State at all. The provisions of § 1, Art. IV, of the Constitution establish a rule of evidence rather than of jurisdiction, and while they make a record of a judgment rendered after due notice, in a State, conclusive evidence in the courts of another State or of the United States, of the matter adjudged they do not affect the jurisdiction either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. *Louisiana* v. *Mayor of New Orleans*, 109 U. S. 286; See also *Anglo-American Provision Co.* v. *Davis Provision Co.*, 62 N. E. Rep. 587; affirmed in this court, 191 U. S. 373.

The Constitution does not require a State to give jurisdiction against its will; it does not require a State to provide a court in which all causes of action may be tried; and it is only where the plaintiff can find a court in which he has a right to come that the effect of the judgment is fixed by the Constitution, and the act in pursuance of it, which Congress passed.

Where a State does provide a court to which its own citizens may resort in a certain class of cases, the right which citizens of other States would have to resort to it in cases of the same class would depend not upon § 1 of Art. IV (which is the only clause of the Constitution invoked and relied upon in this case by the plaintiff in error), but upon § 2, which entitles the citizens of each State to all privileges and immunities of citizens in the several States. *Anglo-American Provision Co.* v. *Davis Provision Co.*, 191 U. S. 373.

Not only from the language of § 2117, Mississippi Code of 1892, but from the opinion of the Supreme Court of Mississippi, delivered in the present case, and from its opinion in the case in 71 Mississippi Reports arising under the statute of 1882, the contract involved was one which the courts of the State are expressly prohibited from enforcing. The present case, therefore, is controlled by *Anglo-American Provision Co.* v. *Davis Provision Co., supra,* and see *Lemonius* v. *Mayer,* 71 Mississippi, 514. See also *Andrews* v. *Andrews,* 188 U. S. 14; *DeVaughn* v. *Hutchinson,* 165 U. S. 566; *Clarke* v. *Clarke,* 178 U. S. 186; *Stone* v. *Mississippi,* 101 U. S. 814; *Railroad Co.* v. *Husen,* 95 U. S. 470.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action upon a Missouri judgment brought in a court of Mississippi. The declaration set forth the record of the judgment. The defendant pleaded that the original cause of action arose in Mississippi out of a gambling transaction in cotton futures; that he declined to pay the loss; that the controversy was submitted to arbitration, the question as to the ille-

gality of the transaction, however, not being included in the submission; that an award was rendered against the defendant; that thereafter, finding the defendant temporarily in Missouri, the plaintiff brought suit there upon the award; that the trial court refused to allow the defendant to show the nature of the transaction, and that by the laws of Mississippi the same was illegal and void, but directed a verdict if the jury should find that the submission and award were made, and remained unpaid; and that a verdict was rendered and the judgment in suit entered upon the same. (The plaintiff in error is an assignee of the judgment, but nothing turns upon that.) The plea was demurred to on constitutional grounds, and the demurrer was overruled subject to exception. Thereupon replications were filed, again setting up the Constitution of the United States (Art. IV, § 1), and were demurred to. The Supreme Court of Mississippi held the plea good and the replications bad, and judgment was entered for the defendant. Thereupon the case was brought here.

The main argument urged by the defendant to sustain the judgment below is addressed to the jurisdiction of the Mississippi courts.

The laws of Mississippi make dealing in futures a misdemeanor, and provide that contracts of that sort, made without intent to deliver the commodity or to pay the price, "shall not be enforced by any court." Annotated Code of 1892, §§ 1120, 1121, 2117. The defendant contends that this language deprives the Mississippi courts of jurisdiction, and that the case is like *Anglo-American Provision Co.* v. *Davis Provision Co. No. 1,* 191 U. S. 373. There the New York statutes refused to provide a court into which a foreign corporation could come, except upon causes of action arising within the State, etc., and it was held that the State of New York was under no constitutional obligation to give jurisdiction to its Supreme Court against its will. One question is whether that decision is in point.

No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to

merits, but the distinction between the two is plain. One goes to the power, the other only to the duty of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise made without consideration; but it has power to do it, and, if it does, the judgment is unimpeachable, unless reversed. Yet a statute could be framed that would make the power, that is, the jurisdiction of the court dependent upon whether there was a consideration or not. Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words, as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule by which the court should decide.

The case quoted concerned a statute plainly dealing with the authority and jurisdiction of the New York court. The statute now before us seems to us only to lay down a rule of decision. The Mississippi court in which this action was brought is a court of general jurisdiction and would have to decide upon the validity of the bar, if the suit upon the award or upon the original cause of action had been brought there. The words "shall not be enforced by any court" are simply another, possibly less emphatic, way of saying that an action shall not be brought to enforce such contracts. As suggested by the counsel for the plaintiff in error, no one would say that the words of the Mississippi statute of frauds, "An action shall not be brought whereby to charge a defendant," Code 1892, § 4225, go to the jurisdiction of the court. Of course it could be argued that logically they had that scope, but common sense would revolt. See 191 U. S. 375. A stronger case than the present is *General Oil Co.* v. *Crain,* 209 U. S. 211, 216. We regard this question as open under the decisions below, and we have expressed our opinion upon it independent of the effect of the judgment, although it might be that, even if jurisdiction of the original cause of action

was withdrawn, it remained with regard to a suit upon a judgment based upon an award, whether the judgment or award was conclusive or not. But it might be held that the law as to jurisdiction in one case followed the law in the other, and therefore we proceed at once to the further question, whether the illegality of the original cause of action in Mississippi can be relied upon there as a ground for denying a recovery upon a judgment of another State.

The doctrine laid down by Chief Justice Marshall was "that the judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the State where it was pronounced, and that whatever pleas would be good to a suit thereon in such State, and none others, could be pleaded in any other court of the United States." *Hampton* v. *McConnel*, 3 Wheat. 234. There is no doubt that this quotation was supposed to be an accurate statement of the law as late as *Christmas* v. *Russell*, 5 Wall. 290, where an attempt of Mississippi, by statute, to go behind judgments recovered in other States was declared void, and it was held that such judgments could not be impeached even for fraud.

But the law is supposed to have been changed by the decision in *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265. That was a suit brought in this court by the State of Wisconsin upon a Wisconsin judgment against a foreign corporation. The judgment was for a fine or penalty imposed by the Wisconsin statutes upon such corporations doing business in the State and failing to make certain returns, and the ground of decision was that the jurisdiction given to this court by Art. III, § 2, as rightly interpreted by the Judiciary Act, now § 687, Rev. Stat., was confined to "controversies of a civil nature," which the judgment in suit was not. The case was not within the words of Art. IV, § 1, and, if it had been, still it would not have and could not have decided anything relevant to the question before us. It is true that language was used which has been treated as meaning that the original claim upon which a judgment is based

may be looked into further than Chief Justice Marshall supposed. But evidently it meant only to justify the conclusion reached upon the specific point decided, for the proviso was inserted that a. court "cannot go behind the judgment for the purpose of examining into the validity of the claim." 127 U. S. 293. However, the whole passage was only a *dictum* and it is not worth while to spend much time upon it.

We assume that the statement of Chief Justice Marshall is correct. It is confirmed by the Act of May 26, 1790, c. 11, 1 Stat. 122 (Rev. Stat. § 905), providing that the said records and judicial proceedings "shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be taken." See further *Tilt* v. *Kelsey*, 207 U. S. 43, 57. Whether the award would or would not have been conclusive, and whether the ruling of the Missouri court upon that matter was right or wrong, there can be no question that the judgment was conclusive in Missouri on the validity of the cause of action. *Pitts* v. *Fugate*, 41 Missouri, 405; *State* v. *Trammel*, 106 Missouri, 510; *In re Copenhaver*, 118 Missouri, 377. A judgment is conclusive as to all the *media concludendi*, *United States* v. *California & Oregon Land Co.*, 192 U. S. 355; and it needs no authority to show that it cannot be impeached either in or out of the State by showing that it was based upon a mistake of law. Of course a want of jurisdiction over either the person or the subject-matter might be shown. *Andrews* v. *Andrews*, 188 U. S. 14; *Clarke* v. *Clarke*, 178 U. S. 186. But as the jurisdiction of the Missouri court is not open to dispute the judgment cannot be impeached in Mississippi even if it went upon a misapprehension of the Mississippi law. See *Godard* v. *Gray*, L. R. 6 Q. B. 139; *MacDonald* v. *Grand Trunk Ry. Co.*, 71 N. H. 448; *Peet* v. *Hatcher*, 112 Alabama, 514.

We feel no apprehensions that painful or humiliating consequences will follow upon our decision. No court would give judgment for a plaintiff unless it believed that the facts were a cause of action by the law determining their effect. Mistakes

will be rare. In this case the Missouri court no doubt supposed that the award was binding by the law of Mississippi. If it was mistaken it made a natural mistake. The validity of its judgment, even in Mississippi, is, as we believe, the result of the Constitution as it always has been understood, and is not a matter to arouse the susceptibilities of the States, all of which are equally concerned in the question and equally on both sides.

*Judgment reversed.*

MR. JUSTICE WHITE, with whom concurred MR. JUSTICE HARLAN, MR. JUSTICE McKENNA and MR. JUSTICE DAY, dissenting.

Admonished that the considerations which control me are presumptively faulty, as the court holds them to be without merit, yet so strong is my belief that the decision now made unduly expands the due faith and credit clause of the Constitution, I state the reasons for my dissent.

By law the State of Mississippi prohibited certain forms of gambling in futures, and inhibited its courts from giving effect to any contract or dealing made in violation of the prohibitive statute. In addition, it was made criminal to do any of the forbidden acts. With the statutes in force two citizens and residents of Mississippi made contracts in that State which were performed therein, and which were in violation of both the civil and criminal statutes referred to. One of the parties asserting that the other was indebted to him because of the contracts, both parties, in the State of Mississippi, submitted their differences to arbitration, and on an award being made in that State the one in whose favor it was made sued in a state court in Mississippi to recover thereon. In that suit, on the attention of the court being called to the prohibited and criminal nature of the transactions, the plaintiff dismissed the case. Subsequently, in a court of the State of Missouri, the citizen of Mississippi, in whose favor the award had been made, brought an action on the award, and succeeded in getting per-

sonal service upon the other citizen of Mississippi, the latter being temporarily in the State of Missouri. The action was put at issue. Rejecting evidence offered by the defendant to show the nature of the transactions, and that under the laws of Mississippi the same were illegal and criminal, the Missouri court submitted the cause to a jury, with an instruction to find for the plaintiff if they believed that the award had been made as alleged. A verdict and judgment went in favor of the plaintiff. Thereupon the judgment so obtained was assigned by the plaintiff to his attorney, who sued upon the same in a court of Mississippi, where the facts upon which the transaction depended were set up and the prohibitory statutes of the State were pleaded as a defense. Ultimately the case went to the Supreme Court of the State of Mississippi, where it was decided that the Missouri judgment was not required, under the due faith and credit clause, to be enforced in Mississippi, as it concerned transactions which had taken place exclusively in Mississippi, between residents of that State, which were in violation of laws embodying the public policy of that State, and to give effect to which would be enforcing transactions which the courts of Mississippi had no authority to enforce. This court now reverses on the ground that the due faith and credit clause obliged the courts of Mississippi, in consequence of the action of the Missouri court, to give efficacy to transactions in Mississippi which were criminal, and which were against the public policy of that State. Although not wishing in the slightest degree to weaken the operation of the due faith and credit clause as interpreted and applied from the beginning, it to me seems that this ruling so enlarges that clause as to cause it to obliterate all state lines, since the effect will be to endow each State with authority to overthrow the public policy and criminal statutes of the others, thereby depriving all of their lawful authority. Moreover, the ruling now made, in my opinion, is contrary to the conceptions which caused the due faith and credit clause to be placed in the Constitution, and substantially overrules the previous decisions of this court

interpreting that clause.   My purpose is to briefly state the
reasons which lead me to these conclusions.

The foundation upon which our system of government rests
is the possession by the States of the right, except as restricted
by the Constitution, to exert their police powers as they may
deem best for the happiness and welfare of those subject to
their authority.  The whole theory upon which the Constitu-
tion was framed, and by which alone, it seems to me, it can
continue, is the recognition of the fact that different conditions
may exist in the different States, rendering necessary the enact-
ment of regulations of a particular subject in one State when
such subject may not in another be deemed to require regula-
tion; in other words, that in Massachusetts, owing to condi-
tions which may there prevail, the legislature may deem it
necessary to make police regulations on a particular subject,
although like regulations may not obtain in other States.
And, of course, such also may be the case in Louisiana or any
other State.  If it be that the ruling now made deprives the
States of powers admittedly theirs, it follows that the ruling
must be wrong.  The inquiry whether the ruling does so be-
comes, therefore, directly pertinent, not merely from con-
siderations of inconvenience, but as a matter of substantial
demonstration.  The due faith and credit clause it is now de-
cided means that residents of a State may within such State
do acts which are violative of public policy, and yet that a
judgment may be rendered in another State giving effect to
such transactions, which judgment it becomes the duty of
the State whose laws have been set at defiance to enforce.
It must follow, if one State by the mere form of a judgment
has this power, that no State has in effect the authority to
make police regulations, or, what is tantamount to the same
thing, is without power to enforce them.  If this be true the
doctrine now upheld comes to this, that no State, generally
speaking, possesses police power concerning acts done within
its borders if any of the results of such acts may be the subject
of civil actions, since the enforcement by the State of its po-

lice regulations as to such acts may be nullified by an exertion of the judicial power of another State. Indeed the principle, as understood by me, goes further than this, since it not only gives to each of the States in the cases suggested the power to render possible an evasion of the police laws of all the other States, but it gives to each State the authority to compel the other States, through their courts, to give effect to illegal transactions done within their borders. It may not be denied that a State which has lawfully prohibited the enforcement of a particular character of transaction and made the same criminal has an interest in seeing that its laws are enforced and will be subjected to the gravest humiliation if it be compelled to give effect to acts done within its borders which are in violation of its valid police or criminal laws. And the consciousness of the enforced debasement to which it would be subjected if compelled to enter a decree giving effect to acts of residents of Mississippi, done within that State, which were violative of the public policy of the State and which were criminal, was clearly shown in the opinion of the Supreme Court of the State in this case.

When the Constitution was adopted the principles of comity by which the decrees of the courts of one State were entitled to be enforced in another were generally known, but the enforcement of those principles by the several States had no absolute sanction, since they rested but in comity. Now it cannot be denied that under the rules of comity recognized at the time of the adoption of the Constitution, and which at this time universally prevail, no sovereignty was or is under the slightest moral obligation to give effect to a judgment of a court of another sovereignty, when to do so would compel the State in which the judgment was sought to be executed to enforce an illegal and prohibited contract, when both the contract and all the acts done in connection with its performance had taken place in the latter State. This seems to me conclusive of this case, since both in treatises of authoritative writers (Story, Conflict of Law § 609), and by repeated adjudications of

this court it has been settled that the purpose of the due faith and credit clause was not to confer any new power, but simply to make obligatory that duty which, when the Constitution was adopted rested, as has been said, in comity alone. Without citing the numerous decisions which so hold, reference is made to a few of the leading cases in which the prior rulings of this court were reviewed, the foregoing principle was stated and the scope of the due faith and credit clause was fully expounded: *Thompson* v. *Whitman*, 18 Wall. 457; *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265; *Cole* v. *Cunningham*, 133 U. S. 107; *Andrews* v. *Andrews*, 188 U. S. 14. A more particular review of those cases will demonstrate why my conviction is that the decision in this case overrules the cases cited.

In *Thompson* v. *Whitman* it was directly held that when a judgment of one State is presented for enforcement in another the due faith and credit clause does not deprive the courts of the State in which it is sought to make the judgment effectual from inquiring into the jurisdiction of the court in which the judgment was rendered.

In *Wisconsin* v. *Pelican Insurance Co.*, a judgment was rendered in Wisconsin against an insurance company for a large amount of money. An original suit was brought in this court upon the judgment. Elaborately considering the authorities, it was held that the due faith and credit clause did not deprive the court of the right to go behind the face of the money judgment and ascertain the cause of action upon which it had been rendered. In other words, it was expressly decided that there was power to ascertain whether the cause of action was such as to give the Wisconsin court jurisdiction to render a judgment entitled to enforcement in other States. This having been determined, as the proof established that the judgment for money rendered in Wisconsin was for a penalty imposed by the statutes of that State, it was held that the judgment was not entitled to be enforced, because when the Constitution was framed no State ever enforced the penal laws of another State. Speaking of the grant of jurisdiction over

"controversies between a State and citizen of another State," it was said (p. 289):

"The grant is of 'judicial power,' and was not intended to confer upon the courts of the United States jurisdiction of a suit or prosecution by the one State, of such a nature that it could not, on the settled principles of public and international law, be entertained by the judiciary of the other State at all."

Certainly if such was the purpose of the framers in regard to the clause referred to, a like purpose must have been intended with reference to the due faith and credit clause. If a judgment for a penalty in money rendered in one State may not be enforced in another, by the same principle a judgment rendered in one State, giving to the party the results of prohibited and criminal acts done in another State, is not entitled to be enforced in the State whose laws have been violated.

Nor do I think that the ruling in the *Pelican case* is at all qualified by a sentence, quoted in the opinion of the court now announced, taken from page 293 of the report of the *Pelican case.* On the contrary, when that sentence is read, in connection with its context, in my opinion, it has a directly contrary effect to that for which it is now cited. The passage in full is as follows, the sentence referred to in the opinion in this case being the part embraced in brackets as found in the original:

"The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action [while it cannot go behind the judgment for the purpose of examining into the validity of the claim], from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it."

It seems to me that the words "validity of the claim," used in the sentence in brackets, but pointed out the absence of power when a judgment is one which is entitled to be enforced

to relitigate the mere question of liability, and that the language which follows the bracketed sentence, declaring that the court is empowered "to ascertain whether the claim is really one of such a nature that the court is entitled to enforce it," leaves no room for the implication that the bracketed sentence was intended to destroy the very doctrine upon which the decision in the *Pelican case* was necessarily based and without which the decision must have been otherwise.

The decision in the *Peilcan case* has never been overruled or qualified; on the contrary, that decision has been affirmed and reaffirmed and approvingly cited in many cases. It was expressly approved in the review which was made of the doctrine in *Cole* v. *Cunningham,* an instructive case on the power of a State to restrain its citizens from prosecuting actions in other jurisdictions, when prosecuting such actions was a violation of the laws of the State of the domicil. So, also, the *Pelican case* was approvingly cited and commented upon in *Andrews* v. *Andrews,* 188 U. S. 14, where the doctrine now under consideration was involved. And the authoritative nature of the decision in the *Pelican case* was recognized in *Anglo-Am. Prov. Co.* v. *Davis Prov. Co.,* No. 1, 191 U. S. 373.

None of the cases to which I have referred conflict with the opinion of Mr. Chief Justice Marshall in *Hampton* v. *McConnel,* 3 Wheat. 234, since that case but determined the degree of effect which was to be given to a judgment which was entitled to be enforced, and therefore did not possibly concern the question here presented. It is by me conceded that if the judgment, whose enforcement is here in question, is one which the courts of Mississippi were bound to enforce under the due faith and credit clause, the courts of that State are obliged to give to the judgment, as declared by Chief Justice Marshall, in *Hampton* v. *McConnel,* the same effect and credit which it was entitled to receive in the State where rendered. But, in my opinion, the concession just stated does not in any way influence the question here involved, which solely is whether the judgment was such an one as to be entitled to any credit at all. In other

words, I do not see how the question, whether a judgment is without the due faith and credit clause, may be controlled by a decision pointing out the extent of the credit to be given to a judgment if it be within that clause.

In addition to the considerations just stated, in my opinion this case is controlled by *Anglo-Am. Prov. Co.* v. *Davis Prov. Co.*, No. 1, *supra*, cited in the opinion of the court. In that case it was held that a judgment rendered in the State of Illinois in favor of one corporation against another corporation, both foreign to New York, was not entitled to be enforced in the courts of New York under the due faith and credit clause, because the statutes of New York enumerating the cases in which jurisdiction might be exercised over actions between foreign corporations did not give jurisdiction of such action as was before the court. Now in this case, in considering the very language found in the statute here in question as contained in a prior statute of the same nature, the Supreme Court of the State held (*Lemonius* v. *Mayer*, 71 Mississippi, 514), "that by the second section of the act of 1882 the complainants were denied access to the courts of this State to enforce their demand . . . for the money advanced for the purchase of the 'futures' in cotton." The want of power in the courts of Mississippi under the local statute is therefore foreclosed in this court by the construction given to the statute by the state court of last resort. At all events, that construction should not be departed from in order to compel the courts of Mississippi to enforce obligations which took origin in that State as the result of the intentional violation of a prohibitory law manifesting the public policy of the State.

No special reference has been made by me to the arbitration, because that is assumed by me to be negligible. If the cause of action was open for inquiry for the purpose of deciding whether the Missouri court had jurisdiction to render a judgment entitled to be enforced in another State, the arbitration is of no consequence. The violation of law in Mississippi could not be cured by seeking to arbitrate in that State in order to fix

the sum of the fruits of the illegal acts. The ancient maxims that something cannot be made out of nothing, and that which is void for reasons of public policy cannot be made valid by confirmation or acquiescence, seem to my mind decisive.

I therefore dissent.