Daisy H. HICKOK et al., Appellants,

v.

GULF OIL CORPORATION et al.,
Appellees.

Carl F. EISENHOUR, etc., et al.

v.

GULF OIL CORPORATION et al.
(two cases).

Nos. 13587–13589.

United States Court of Appeals
Sixth Circuit.

April 16, 1959.

Robert B. Gosline and Charles J. Cole, Toledo, Ohio, for appellants Carl F. Eisenhour, et al.

Thomas L. Dalrymple, Toledo, Ohio, Henry W. Seney, William L. Kreutz, Toledo, Ohio, and Hubert E. Hartman, Detroit, Mich., on the brief, for appellants Daisy H. Hickok et al.

John R. Eastman, Toledo, Ohio, LeRoy E. Eastman, Henry R. Bloch, James J. Robison, Robert N. Torbet, Toledo, Ohio, on the brief, for appellees.

Before MILLER, Circuit Judge, and MATHES and SHELBOURNE, District Judges.

MATHES, District Judge.

Three separate appeals have been brought from an interlocutory order dissolving a temporary injunction [28 U.S.C. § 1292(1)] in a diversity interpleader action involving proceeds accruing to the ownership of certain mineral rights or land-owner royalty interests, aggregating 9/256ths of ⅛ or .004395%, in certain oil producing land of Ector County, Texas, known as the "Goldsmith property." 28 U.S.C. §§ 1335, 2361; Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.

The material facts are not in dispute. The interests in controversy stem from the estate of A. S. Hickok who died in 1945 domiciled in Ohio, leaving substantial property interests in Ohio and a half interest in a partnership engaged in the oil business in Texas. The Goldsmith property interest was one of the assets of this partnership. Hickok's will placed in trust most of his estate, including his interest in the Goldsmith property, with the provision that the trust income be paid to his widow and children and others for twenty years, and that the remainder be distributed in 1965 to a group of some twenty charities, most of which are appellees here.

Domiciliary probate proceedings are pending in Ohio, and ancillary proceedings are pending in Texas. The Ohio courts have held that, inasmuch as the will was not "executed at least one year prior to the death of the testator", the devise to the charities is invalid under Ohio Revised Code, § 2107.06 (formerly General Code, § 10504–5). Kirkbride v. Hickok, 1951, 155 Ohio St. 293, 98 N.E.2d 815.

On the other hand, the Texas courts have held that the devise to the charities is valid under the law of Texas. Toledo Society for Crippled Children v. Hickok, 1953, 152 Tex. 578, 261 S.W.2d 692, 43 A.L.R.2d 553, certiorari denied, 1954, 347 U.S. 936, 74 S.Ct. 631, 98 L.Ed. 1086. According to Texas law the Goldsmith royalty involved here is real property, an interest in the mineral in place prior to extraction from the land. See: Sheffield v. Hogg, 1934, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; State ex rel. Moody v. Hatcher, 1926, 115 Tex. 332, 281 S.W. 192. And it has long been

settled that the law of the State in which real property is situated governs the devise of an interest therein. De Vaughn v. Hutchinson, 1897, 165 U.S. 566, 570, 17 S.Ct. 461, 41 L.Ed. 827.

No useful purpose would be served by detailing all the court proceedings involving the Hickok estate heretofore had in Ohio, Texas and elsewhere. Exceptions filed by the charities 'to the domiciliary executors' accounts now await hearing in Ohio; while still further exceptions by the charities to the ancillary executors' accounts await hearing in Texas. Additionally, there is pending in the District Court of Eastland County, Texas, a suit by the charities seeking a determination of rights in, and an accounting as to, the properties comprising the Hickok estate in Texas, including the Goldsmith property. Still other litigation is pending in Ohio to enforce the Ohio judgment that the charities are not entitled to take under the will. However, the brief filed in this Court on behalf of the appellee charities declares that: "Since the decision of the Supreme Court of Ohio in Kirkbride v. Hickok, 155 O[hio] S[t.]. 293, [98 N.E. 2d 4], the Charities have made no claim to any of the Ohio property of the Hickok estate. They make none now."

While these proceedings were pending, in August of 1956 the charities served notice of *lis pendens* in Texas on appellee Gulf Oil Corporation, lessee of the Goldsmith property, citing the pendency of the action of the charities for an accounting in the District Court of Eastland County, Texas, and the pending exceptions by the charities to the ancillary executors' accounts in the Texas probate court. Gulf Oil Corporation thereupon refused further to pay the widow or the executors or the trustees of the testamentary trust any of the royalty payments accruing under the Goldsmith property lease after August 1, 1956. Actions ensued in the Court of Common Pleas of Lucas County, Ohio, to recover the accruing royalties, and led to the bringing of this diversity interpleader action in the United States District Court for the Northern District of Ohio against all claimants.

In due course the Federal Court issued a preliminary injunction restraining the claimants, until further order of court, "from instituting or prosecuting any proceeding" against Gulf Oil Corporation for the recovery of any of the proceeds attributable to the royalty interests in controversy. This preliminary injunction is still in force and is not challenged on this appeal. Gulf Oil Corporation, as plaintiff in interpleader, was directed to deposit the accruing royalty payments in the registry of the Court until further order, and these payments have been made. By March 31, 1958, some $160,000 had been so deposited in the registry, and such payments are continuing at a monthly rate of "about $8,-000."

The claimants were also ordered to and did interplead their claims, and on March 28, 1957, upon motion of the widow, the children, the executors and the trustees—all appellants here—the court entered an order enjoining "said Charities and Attorneys * * * from instituting or prosecuting any proceeding in any * * * [other] court against said moving defendants," for the recovery of any of the proceeds of the royalty interests in controversy, until further order of court.

Almost a year later, on March 5, 1958, upon motion of the charities, an order was entered "that the restraining order issued on March 28, 1957 * * * be, and it hereby is, dissolved, and that all proceedings in this cause be and are stayed until final determination of cause No. 21874 in the 91st District Court of Eastland County, Texas, or until further order of the court." It is this order of March 5, 1958, in effect permitting the charities to continue their Texas litigation to a final determination, which is challenged on this appeal. See Gulf Oil Corp. v. Eisenhour, D.C.N.D.Ohio, W.D. 1958, 158 F.Supp. 663.

▌▌ As between federal and state courts, the settled rule of comity requires that the court, which first obtains actual

or constructive possession of property in the exercise of its jurisdiction, be permitted to retain control of the property without interference from the other, since "the jurisdiction of one court must of necessity yield to that of the other." United States v. Bank of New York and Trust Co., 1936, 296 U.S. 463, 477–478, 56 S.Ct. 343, 347, 80 L.Ed. 331; Harkin v. Brundage, 1928, 276 U.S. 36, 43, 48 S.Ct. 268, 72 L.Ed. 457; Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 1901, 177 U.S. 51, 61, 20 S.Ct. 564, 44 L.Ed. 667; Hagan v. Lucas, 1836, 10 Pet. 400, 35 U.S. 400, 403, 9 L.Ed. 470.

Here there can be no question as to the Federal court's jurisdiction in the interpleader action [28 U.S.C. §§ 1335, 2361; Treinies v. Sunshine Mining Co., supra, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85], or as to the Federal court's prior actual possession of the property with respect to which it is called upon to adjudicate the title, namely, the proceeds of the royalty payments deposited in the registry. Nor is the Federal court's jurisdiction in anywise affected by the circumstance that the funds in the registry possess the legal character of proceeds derived from the sale of interests in Texas realty, or by the fact that title to those funds is to be determined in accordance with Texas law. [See Sanders v. Armour Fertilizer Works, 1934, 292 U.S. 190, 200, 54 S.Ct. 677, 78 L.Ed. 1206; cf.: Fischer v. American United Ins. Co., 1942, 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444; Princess Lida v. Thompson, 1939, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285.]

Thus, while the State court in Texas has unquestioned jurisdiction over the Texas land, the Federal court has equally unquestioned jurisdiction over the proceeds from sale of certain interests in the land. [Mandeville v. Canterbury, 1943, 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed. 605; Toucey v. N. Y. Life Ins. Co., 1941, 314 U.S. 118, 134–136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; Commonwealth Trust Co. v. Bradford, 1936, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920.] So the problem presented upon this appeal is not whether the Federal court has power to proceed to adjudicate title to the fund under applicable law, since the power so to do is clear, both as to parties and as to subject matter. [See: The Fair v. Kohler Die Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Fauntleroy v. Lum, 1908, 210 U.S. 230, 235, 28 S.Ct. 641, 52 L.Ed. 1039.]

Neither is this a case where the Federal court is attempting to abdicate diversity jurisdiction and yield to the jurisdiction of a State court, as in Meredith v. City of Winterhaven, 1943, 320 U.S. 228, 234–238, 64 S.Ct. 7, 88 L.Ed. 9; nor a case where it would be proper to do so, as in Penn General Casualty Co. v. Commonwealth of Pennsylvania, 1935, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841. Rather the precise question at bar is whether the Federal court has abused discretion in deferring adjudication of the rights of the interpleaded claimants to the fund pending final determination of the action previously brought by the charities in the District Court of Eastland County, Texas.

The pending litigation in the District Court of Eastland County, Texas, and the pending ancillary proceeding in the Texas probate court, both long antedate the commencement of the interpleader suit at bar. Moreover, the parties to the interpleader suit are now before both Texas courts: the District Court of Eastland County, Texas, wherein the charities sue for an accounting, and the Texas probate court—the County Court—wherein the charities have pending objections to the accounts of the ancillary executors of the Texas estate. Furthermore, the parties are now before the Probate Court of Lucas County, Ohio, upon objections filed by the charities to the accounts of the domiciliary executors.

With the restraint lifted by the order under review, the parties can proceed to litigate in the State courts the com-

plicated accounting problems before them. To indicate a few of these: the charities contend in the Texas courts that they are entitled to have all or some of appellants here account for the proceeds of various allegedly unauthorized conversions into personalty of the decedent's interests in Texas realty, other than the Goldsmith property; that the charities are entitled to follow through various transmutations and transfers each *res* so converted; that an accounting is due the charities as to what proceeds of Texas realty have been used to pay "estate and inheritance taxes", and "debts, obligations, charges and expenses of administration" of the estate.

■ In pursuit of their claim to a vested remainder under Texas law in all interests of the decedent in Texas real property, the charities seek in the Texas court a determination as to which of the Texas assets of the decedent were, under Texas law, realty at the death of the decedent. The charities make no claim to any interest in Texas personalty, conceding that it passes under the law of Ohio. Once it has been determined in accordance with the law of Texas what portion of the estate represents Texas realty, then arises the problem of determining under Texas law what part is income and what part is principal of the trust. That brings into play, among other considerations, the Texas "open mine" doctrine which, as we understand it, generally requires that if the oil lease was an "open mine", i. e. in production, at the date of death, then the life tenants under the trust would take all the net income from royalty payments, while the remaindermen, here the charities, would take none until termination of the trust. But *per contra*, if the presently producing oil land was not an "open mine" producing minerals at the death of the decedent, then the royalty payments would be saved for the remaindermen as part of the corpus of the trust. [For varying applications of the doctrine, see: Youngman v. Shular, 1956, 155 Tex. 437, 288 S.W.2d 495; Thompson v. Thompson, 1951, 149 Tex. 632, 236 S.W.2d 779;

White v. Blackman, Tex.Civ.App.1943, 168 S.W.2d 531; Swayne v. Lone Acre Oil Co., 1905, 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986.]

Additionally, we were told at the bar upon oral argument that the appellee charities are also raising in the Texas courts questions as to the proper apportionment of past and present depletion allowances as between the life tenants and the remaindermen under the testamentary trust.

■ What has been said is not of course a full recital of all the contentions of the respective parties in the various courts, or of all the accounting problems that confront them. Much that has happened since the death of the decedent in 1945 appears to have resulted in complication rather than simplification of the problems inherent in the administration of his estate. But enough has been said, we think, to indicate the basis for our view that District Judge Kloeb did not abuse his discretion in dissolving the temporary injunction and permitting the parties to proceed with the accounting action in the District Court of Eastland County, Texas, and, if and when practicable, with their objections to the accounts of the ancillary executors in the Texas probate court, and with their objections to the accounts of the domiciliary executors in the Ohio probate court.

Thus free to litigate their respective claims to the various Texas properties and the accounting problems between themselves as well, it may fairly be expected that the parties will return to the prosecution of their claims in the interpleader suit not only with an adjudication of their respective interests, but also with some up to date settlement of accounts as between them.

Indeed, we are unable to perceive how, upon last analysis, the claims to the accumulated funds in the registry of the Federal court can be finally adjudicated until after the Texas courts upon the ancillary accounting there, and possibly the Ohio courts upon the domiciliary accounting there, have determined the

nature and amount of the claims of the parties *inter sese*.

That done, the Federal court will of course have yet to make its own independent adjudication as to who owns the fund in *custodia legis* and under its exclusive jurisdiction; an adjudication which will no doubt involve claims arising from the pending litigation in Texas and possibly Ohio, as well as the problem of determining who owns what interest in the Goldsmith property.

To wait upon adjudication in the Texas courts, as Judge Kloeb has decided to do "until the further order of the court", seems under the circumstances a wise exercise of discretion. In the language of City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 172–173, 62 S.Ct. 986, 988, 86 L.Ed. 1355: "Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us, do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole. The desirability of the course * * * suggested is not embarrassed by any question as to whether ready recourse may be had to the state courts. The availability of the state tribunal is obvious, since a case involving substantially identical issues * * * is pending in the state court. Cf. Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652."

In passing it might be noted that in Meredith v. City of Winterhaven, supra, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, upon which appellants strongly rely here, the Court expressly pointed to the circumstance that: "No litigation [was] pending in the state courts in which the questions [there] presented could be decided." [320 U.S. at page 237, 64 S.Ct. at page 12.] Moreover, there as here Federal diversity jurisdiction alone was invoked, and "For purposes of diversity jurisdiction a federal court is 'in effect, only another court of the State.'" [Angel v. Bullington, 1947, 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832.]

■ As the Court said in Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. * * * The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." [312 U.S. at page 500, 61 S.Ct. at page 645, 85 L.Ed. 971; see also: Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876; cf. Markham v. Allen, 1946, 326 U.S. 490, 495, 496, 66 S.Ct. 296, 90 L.Ed. 256.]

Although it does not now appear that the Federal court confronts in the interpleader suit at bar a constitutional issue which it would be desirable if possible to avoid, as was the case in Chicago v. Fieldcrest Dairies, supra, 316 U.S. at page 172, 62 S.Ct. 986, 86 L.Ed. 1355, and in Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. at page 496, 61 S.Ct. 643, 85 L.Ed. 971, we are nonetheless of opinion that considerations of reason and policy similar to those which impelled the Court there are operative here to sustain the interlocutory order under review.

Laying aside the accounting problems which may be involved in the respective claims of the parties to the accumulated fund in the registry, it would not be less than embarrassing for the Federal court to decide the claims of ownership to the continuing monthly royalty payments under Texas law in a manner at variance with a controlling decision of the Texas court which might be binding in personam upon all claimants in the interpleader suit.

■ Appellants complain of certain findings of fact and conclusions of law made as a predicate for the order under review, but we need not notice these upon this appeal, since the findings are purely interlocutory in character and may of course be "rendered of no avail by the presentation of other or additional

**804**

evidence when the case comes on for final hearing" [City of Hammond v. Schappi Bus Line, 1927, 275 U.S. 164, 172, 48 S.Ct. 66, 69, 72 L.Ed. 218], and the conclusions are subject to change at any time up to final judgment. [Cf. Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224.]

No abuse of discretion on the part of the United States District Court appearing in the record before us [Rice & Adams v. Lathrop, 1929, 278 U.S. 509, 514–515, 49 S.Ct. 220, 73 L.Ed. 480; Meccano, Ltd., v. John Wanamaker, 1920, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822], the interlocutory order dissolving the temporary injunction is affirmed.