# Supreme Court of Florida

_____

No. SC15-1037
_____

**RUTH D. LEDOUX-NOTTINGHAM,**
Petitioner,

vs.

**JENNIFER JOY DOWNS, etc.,**
Respondents.

[February 16, 2017]

CANADY, J.

In this case we consider whether the Full Faith and Credit Clause of the United States Constitution requires enforcement of a sister state's judgment ordering grandparent visitation with minor children despite the fact that the right of privacy set forth in article I, section 23 of the Florida Constitution protects the right of parents to raise their children free from unwarranted governmental interference. We have for review LeDoux-Nottingham v. Downs, 163 So. 3d 560 (Fla. 5th DCA 2015), in which the Fifth District Court of Appeal rejected the argument that a Colorado judgment ordering grandparent visitation is unenforceable as a matter of Florida law and public policy because it violates "childrearing autonomy"

guaranteed to parents under article I, section 23 of the Florida Constitution. The Fifth District held that under "the Full Faith and Credit Clause [of the United States Constitution], trial courts are required, without discretion, to give recognition to final judgments of another state when applicable," and certified conflict with M.S. v. D.C., 763 So. 2d 1051, 1055 (Fla. 4th DCA 1999), in which the Fourth District held that the Full Faith and Credit Clause does not trump Florida's overriding public policy of a guaranteed fundamental right of privacy in childrearing autonomy. LeDoux-Nottingham, 163 So. 3d at 563-65. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

For the reasons we explain, we approve the Fifth District's decision in LeDoux-Nottingham and disapprove the Fourth District's decision in M.S. We also disapprove the decision of the Second District in Fazzini v. Davis, 98 So. 3d 98 (Fla. 2d DCA 2012), to the extent that it holds that Florida's public policy may provide an exception to the full faith and credit due judgments of sister states.

## I. BACKGROUND

Petitioner, Ruth D. LeDoux-Nottingham, and the father of her two minor children were divorced in Colorado in 2010. LeDoux-Nottingham, 163 So. 3d at 561. The father died in 2011 in Colorado. Id. Immediately after the funeral, LeDoux-Nottingham and her minor children moved to Florida. Id. Respondents, Jennifer Joy Downs and William Glen Downs (hereinafter "the Grandparents"),

- 2 -

timely initiated a proceeding in Colorado seeking visitation with the children.  Id. LeDoux-Nottingham then filed a separate action in Florida to register the Colorado final judgment dissolving her marriage and for a judicial determination that the Grandparents have no legal right to timesharing with her minor children.  Id.  In October 2012, the Colorado court issued a final judgment awarding the Grandparents visitation with the children (hereinafter "the Colorado order").  Id. at 562.  LeDoux-Nottingham then amended her petition in Florida and sought to both domesticate and modify the Colorado order, arguing, in relevant part, that under Florida law, enforcement of a grandparent visitation order is unconstitutional and against public policy.  Id.  After a trial, the Florida court entered a final order which registered and domesticated the Colorado order, stated that it was enforceable in Florida, and denied LeDoux-Nottingham's request for modification. Id.

LeDoux-Nottingham appealed the Florida trial court's order, arguing that the Colorado order was unenforceable as a matter of Florida law and public policy because it violates childrearing autonomy guaranteed to parents under article I, section 23 of the Florida Constitution, which states that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."  Id. (alteration in original).  In rejecting LeDoux-Nottingham's argument, the Fifth District relied on the decision

- 3 -

of the United States Supreme Court in <u>Baker v. General Motors Corp.</u>, 522 U.S. 222 (1998), which the district court concluded "makes clear that the public policy of one state has no effect on whether the state must give full faith and credit to judgments, rather than law, of another state," and held that under "the Full Faith and Credit Clause, trial courts are required, without discretion, to give recognition to final judgments of another state when applicable." 163 So. 3d at 563. The district court concluded that the trial court properly enforced the Colorado order granting the Grandparents visitation, reasoning as follows:

> Since the Colorado order was a final judgment and emanated from a "child custody proceeding" within the meaning of section 61.503(4), Florida Statutes (2013),[N.2] it became enforceable in Florida pursuant to the Full Faith and Credit Clause as well as section 61.526, Florida Statutes. <u>See</u> [<u>Baker</u>, 522 U.S. at 232-33]; § 61.526(1), Fla. Stat. (2013) ("A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.").
>
>> [N.2] § 61.504(4), Fla. Stat. (2013) (defining "child custody proceeding" as "a proceeding in which legal custody, physical custody, residential care, or visitation with respect to a child is an issue").

<u>Id.</u>

The Fifth District also affirmed the trial court's decision that modification of the Colorado order was not warranted because there had not been a subsequent substantial and material change in circumstances. <u>Id.</u> at 564. And the Fifth

District certified conflict with M.S., in which the Fourth District reversed an order granting a motion for visitation filed by grandparents based on a Connecticut divorce and custody decree that provided for grandparent visitation. The Fourth District in M.S. stated:

> We have considered the argument that the Connecticut [grandparent] visitation order is entitled to full faith and credit. However, a visitation provision such as this, while entitled to our respect on comity principles, does not prevent the application of an overriding provision of our law, applying a paramount public policy. As our supreme court has recognized, few policies in the state are more paramount than enforcement of an exercise of a recognized constitutional right to privacy.

763 So. 2d at 1055 (citations omitted).

## II. ANALYSIS

In the analysis that follows, we first consider whether final judgments entered by sister states relating to child custody and visitation are entitled to full faith and credit or subject to the principles of comity. Because we conclude that such judgments are entitled to full faith and credit, we then consider whether the Full Faith and Credit Clause mandates enforcement of the Colorado order in Florida even if such enforcement would violate LeDoux-Nottingham's right of privacy under the Florida Constitution or whether there is a public policy exception to the Full Faith and Credit Clause. We conclude that there is no public policy exception to the Full Faith and Credit Clause, and the Colorado order is enforceable in Florida.

## A. Comity vs. the Full Faith and Credit Clause

Because the Fourth District in <u>M.S.</u> held that a grandparent visitation order from a sister state was entitled to "respect on comity principles," 763 So. 2d at 1055, while the Fifth District below held that under "the Full Faith and Credit Clause, trial courts are required, without discretion, to give recognition to final judgments of another state when applicable," 163 So. 3d at 563, we first consider whether child custody and visitation orders entered by a sister state are entitled to full faith and credit or merely subject to the principles of comity.

The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Art. IV, § 1, U.S. Const. The clause was intended to replace the earlier rule of comity with a constitutional duty of states to honor the laws and judgments of sister states. <u>Estin v. Estin</u>, 334 U.S. 541, 546 (1948) (noting that the Full Faith and Credit Clause "substituted a command for the earlier principles of comity and thus basically altered the status of the States as independent sovereigns"). The clause contains implementing language that gives Congress the power "by general Laws [to] prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1, U.S. Const. Congress adopted such a law with regard

to custody determinations when it enacted the Parental Kidnaping Prevention Act of 1980 (PKPA). Pub. L. 96-611, §§ 6-10, 96 Stat. 3568 (1980).

The PKPA requires "every State [to] enforce according to its terms . . . any custody determination or visitation determination made consistently with the provisions of this section[1] by a court of another State." 28 U.S.C. § 1738A(a) (2012). In Thompson v. Thompson, 484 U.S. 174, 183 (1988), the United States Supreme Court explained that "Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations" and that "the PKPA is a mandate directed to state courts to respect the custody decrees of sister States." Thus, there is no doubt that custody determinations of a sister state are entitled to full faith and credit.

LeDoux-Nottingham acknowledges that custody determinations are entitled to full faith and credit under the PKPA and she does not contend that the Colorado

---

1. Consistency with section 1738A has been described as follows:

> In order for a state court's custody decree to be consistent with the provisions of the Act, the State must have jurisdiction under its own local law and one of five conditions set out in § 1738A(c)(2) must be met. Briefly put, these conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused.

Thompson v. Thompson, 484 U.S. 174, 176-77 (1988).

court did not have jurisdiction to enter the visitation order. Even so, she contends that the PKPA does not apply here because "this is not a custody issue" and the PKPA applies only to parents. This contention is untenable.

The PKPA was amended in 1998 to include any "visitation determination" in addition to "any custody determination." See Enforcement of Child Custody and Visitation Orders, Pub. L No. 105-374, 112 Stat. 3383 (1998) ("Section 1738A(a) of title 28, United States Code, is amended by striking 'subsection (f) of this section, any child custody determination' and inserting 'subsections (f), (g), and (h) of this section, any custody determination or visitation determination.' "). The 1998 amendment also modified the definition of a "contestant" in subsection (b)(2) from "a person, including a parent, who claims a right to custody of a child" to "a person, including a parent or grandparent, who claims a right to custody or visitation of a child." Id. (emphasis added).

Because the PKPA explicitly applies to "any custody determination or visitation determination," including those in which a grandparent claims a right to visitation of a child, the Colorado order—which was entered in compliance with the PKPA—is by the express terms of the PKPA subject to the commands of the Full Faith and Credit Clause. And to the extent that the PKPA conflicts with Florida law, the PKPA—as federal law—controls under the Supremacy Clause of the United States Constitution. Yurgel v. Yurgel, 572 So. 2d 1327, 1329 (Fla.

1990) ("Under the supremacy clause of the [United States] Constitution, the PKPA supersedes any and all inconsistent state laws." (citing Thompson)); see art. VI, cl. 2, U.S. Const. ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").[2]

### B. Whether a Public Policy Exception to the Full Faith and Credit Clause Exists

We next consider whether a public policy exception to the Full Faith and Credit Clause exists that would prevent enforcement of the Colorado order in Florida. LeDoux-Nottingham asserts that enforcement of the Colorado order is not required in Florida because it would offend the right of privacy as articulated in article I, section 23 of the Florida Constitution and there is a public policy exception to the Full Faith and Credit Clause. While the Florida Constitution does protect the right of parents to raise their children free from unwarranted governmental interference, see Richardson v. Richardson, 766 So. 2d 1036, 1043 (Fla. 2000), that state right is subordinate to the directives of the Federal

---

2. LeDoux-Nottingham has not challenged the constitutional authority of Congress to enact the PKPA.

- 9 -

Constitution under the Supremacy Clause, and the United States Supreme Court has made it clear that there is no public policy exception to the full faith and credit due final judgments of a sister state.

As explained by the Supreme Court, the Full Faith and Credit Clause "requires each State to recognize and give effect to valid judgments rendered by the courts of its sister States." V.L. v. E.L., 136 S. Ct. 1017, 1020 (2016). It serves "to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation." Milwaukee County v. M.E. White Co., 296 U.S. 268, 277 (1935); see also Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 439 (1943) (noting that "the clear purpose of the full faith and credit clause" was to establish the principle that "a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered"); Pac. Employers Ins. Co. v. Indus. Accident Comm'n, 306 U.S. 493, 501 (1939) ("[T]he purpose of [the Full Faith and Credit Clause] was to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in other states . . . ."). As authorized by the Full Faith and Credit Clause, Congress has prescribed:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every

- 10 -

court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

In interpreting the Full Faith and Credit Clause, the Supreme Court stated in Baker, "Regarding judgments . . . the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." 522 U.S. at 233. There is "no roving 'public policy exception' to the full faith and credit due judgments." Id. (citing Estin, 334 U.S. at 546 (stating that the Full Faith and Credit Clause "ordered submission by one State even to hostile policies reflected in the judgment of another State, because the practical operation of the federal system, which the Constitution designed, demanded it"), and Fauntleroy v. Lum, 210 U.S. 230, 237 (1908) (holding that judgment of Missouri court was entitled to full faith and credit in Mississippi even if Missouri judgment rested on a misapprehension of Mississippi law)).

Last year, the Court reiterated these principles, stating:

> With respect to judgments, "the full faith and credit obligation is exacting." Baker v. General Motors Corp., 522 U.S. 222, 233 (1998). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." Ibid. A State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits. On the contrary, "the full faith and credit

clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." Milliken v. Meyer, 311 U.S. 457, 462 (1940).

V.L., 136 S. Ct. at 1020. The Supreme Court thus continues to reject any notion that a state may elevate its own public policy over the policy behind a sister state's judgment and thereby disregard the command of the Full Faith and Credit Clause.

Although we have previously held unconstitutional numerous Florida statutes providing for grandparent visitation as violative of Florida's right of privacy,[3] the question presented here is not whether the Grandparents are entitled to visitation under Florida law, but whether Florida is required to enforce the Colorado order despite the fact that entry of a similar judgment by a Florida court under the same circumstances would be prohibited by the Florida Constitution,[4] and the answer is yes.

---

3. See Sullivan v. Sapp, 866 So. 2d 28, 37 (Fla. 2004); Richardson v. Richardson, 766 So. 2d 1036, 1043 (Fla. 2000); Saul v. Brunetti, 753 So. 2d 26, 29 (Fla. 2000); Von Eiff v. Azicri, 720 So. 2d 510, 517 (Fla. 1998); Beagle v. Beagle, 678 So. 2d 1271, 1276 (Fla. 1996). We have not considered the constitutionality of the current limited grandparent visitation provision, section 752.011, Florida Statutes (2015).

4. Entry of a similar judgment by a Florida court under the same circumstances would undoubtedly be prohibited by the Florida Constitution. Colorado law provides for grandparent visitation in the case of a divorce or a deceased parent based on the best interests of the child without first requiring proof of demonstrable harm to the child, see section 19-1-117, Colorado Revised Statutes, and the Colorado court here indeed ordered visitation based on the children's best interests alone, but we held in Von Eiff, 720 So. 2d at 516-17, that

- 12 -

## III. CONCLUSION

For the reasons explained above, we approve the decision of the Fifth District in <u>LeDoux-Nottingham</u> and disapprove the decision of the Fourth District in <u>M.S.</u> to the extent that it applied comity principles to an out-of-state visitation order rather than the Full Faith and Credit Clause and concluded that Florida's public policy can override the requirement to provide full faith and credit to judgments entered by a sister state.  We also disapprove the decision of the Second District in <u>Fazzini</u> to the extent that it holds that the public policy of Florida may provide an exception to the full faith and credit due to judgments entered by a sister state.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and POLSTON, JJ., concur.
LEWIS, J., concurs in result.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fifth District - Case No. 5D14-944

(Orange County)

---

Florida's right of privacy was violated by section 752.01(1)(a), Florida Statutes (1993), which mandated that if one or both parents are deceased, a court shall order grandparent visitation when in the best interest of the minor child, without first requiring proof of demonstrable harm to the child.

Jamie Billotte Moses of Holland & Knight LLP, Orlando, Florida,

    for Petitioner

Andrew Thomas Windle of The Windle Family Law Firm, P.A., Orlando, Florida,

    for Respondents